### HOSPITAL DEVELOPMENT AND SERVICE CORP., d/b/a Plantation General Hospital, Plaintiff,

v.

### NORTH BROWARD HOSPITAL DISTRICT, Broward County, Defendants.

### NORTH BROWARD HOSPITAL DISTRICT, Counterclaimant,

v.

### HOSPITAL CORPORATION OF AMERICA, General Health Services, Inc., Hospital Services Acquisition Corp., HCA Health Services of Florida, Inc., North Beach Community Hospital, Margate General Hospital, Hospital Development and Service Corporation, d/b/a Plantation General Hospital, and Tamarac Hospital Corp., Inc., d/b/a University Community Hospital, Counterdefendants.

### No. 81–6103–Div–CA–MARCUS.

United States District Court, S.D. Florida.

Sept. 16, 1985.

Alexander Cocalis, Chief Trial Counsel, Susan F. Delegal, Deputy Gen. Counsel, Janet Lander, Gen. Counsels' Office, Fort Lauderdale, Fla., for Broward County.

Ellen Gibbs, Gibbs & Zei, P.A., Michael Nachwalter, Fort Lauderdale, Fla., for Plantation General Hosp.

James Kenny, Kenny Nachwalter & Seymour, Miami, Fla., for Hospital Development and Service Corp.

Donald Flexner, Crowell & Moring, Washington, D.C., Alan G. Greer, Floyd Pearson Richman, Greer Weib Zack & Brumbaugh, Miami, Fla., for Hospital Dist.

ORDER GRANTING DEFENDANT, NORTH BROWARD HOSPITAL DISTRICT'S RENEWED MOTION FOR SUMMARY JUDGMENT ON THE REMAINING ANTITRUST CLAIM

ATKINS, District Judge.

This cause is before the court on defendant, North Broward Hospital District's Renewed Motion for Summary Judgment on Count III of the Amended Complaint. Count III is the last remaining antitrust claim in this lawsuit. After careful consideration of the record in this matter and upon hearing oral argument, it is ORDERED AND ADJUDGED that the motion is GRANTED.

Count III of plaintiff's Amended Complaint alleges that the Tax District has

attempted to monopolize trade and commerce in the market for hospital care and services within the geographic area serviced by the District Hospitals and the submarket for emergency medical care and services in the same geographic area in violation of § 2 of the Sherman Act. The defendant, North Broward Hospital District, asserts that the Hospital District policies that Plantation complains of fall within the "state action exemption" and cannot be subjected to antitrust challenge. In support of its contention, the defendant relies heavily on *Town of Hallie v. City of Eau Claire*, —— U.S. ——, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). In *Town of Hallie*, the Supreme Court considered the issue of how clear a state policy must be articulated for a municipality to be unable to establish that its anticompetitive activity constitutes state action. In an unanimous decision, the Court held that (1) a statute granting a subordinate agency the authority to act in a defined area is not merely "neutral" as that term was used in *Community Communications Co. v. City of Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982); (2) state compulsion of the challenged policies is not required; and (3) the fact that the authorizing statutes leaves the defendant with discretion is not inconsistent with state action immunity.

In *Town of Hallie*, the defendant city was authorized to construct and maintain sewage systems, and to limit the extent of sewage services that it provided. Plaintiffs alleged that the defendant held a monopoly over sewage treatment and used this monopoly to disadvantage competitors by "tying" the provision of sewage treatment services to the use of the city's sewage collection and transportation services. The Supreme Court held that the City of Eau Claire's general authority to maintain a sewage system, and to limit the scope of that system, was sufficient to satisfy the "state action" requirement even as to the precise conduct alleged by plaintiff in its complaint.

The statutes upon which the state action findings in *Town of Hallie* were based are similar in scope and generality to the provisions of the Hospital District's Charter that provide the authority for the policies challenged by plaintiff. The statutes at issue in *Town of Hallie* made "no express mention of anticompetitive conduct," and left the defendant "free to pursue either anticompetitive conduct or free-market competition in the field of sewage services." 105 S.Ct. at 1718.

Like the defendant in *Town of Hallie*, the Hospital District is alleged to have limited the services that it provides in an anticompetitive manner. As in *Town of Hallie*, the Hospital District is authorized to operate hospitals, admit and treat patients, and to "treat without charge" indigent patients. The Hospital District's Charter affirmatively grants it the authority to fix the limits of the services that it provides. Section 6 of the Charter expressly authorizes the Hospital District to operate hospitals, and expressly grants the District's Board the authority to fix "the terms, conditions and consideration for the use thereof." Section 30 of the Charter expressly provides that admission to Hospital District hospitals is subject to such rules and regulations as are prescribed by the Board. At least one Florida court has confirmed that these provisions authorize the Hospital District to limit the admission of patients. *Moore v. North Broward Hospital District*, No. 78–19189 (17th Judicial Cir., Dec. 11, 1978).[1]

---

**1.** With respect to free services, the language of the Enabling Act re-emphasizes the discretion possessed by the Board by noting that the Hospital District "may," not must, treat without charge. If the Hospital District is authorized, but not required, to "treat without charge," it is also authorized not to "treat without charge." The state's Public Medical Assistance Act, Fla. Laws ch. 84–35, expressly contemplates that private hospitals will continue to treat indigent patients, and that any reimbursement will come from a specific state fund being established for that purpose. That statute, which establishes a state policy that indigents will be treated in all hospitals, and reimbursement will come from *the state* fund, and not local government, provides an important additional indication of state policy.

The plaintiff argues that since the North Broward Hospital District and the South Broward Hospital District operate under identical state charters and have each established different transfer policies, this precludes an assertion by defendant that there is a clearly articulated state policy supporting the defendants allegedly anticompetitive conduct. This is plaintiff's strongest argument in support of their contention that the state action" immunity doctrine does not apply in this case. Plaintiff's argument fails, however, in light of the Supreme Court decision in *Town of Hallie*.

The fact that the Hospital District has been granted discretionary power to set limits and establish trade-offs in the way it runs its hospitals reflects a legislative judgment to leave such decisions to the local Board, to be exercised in light of its experience and any competing needs for district funds. That is precisely why broad authority is delegated to the local body in the first place. "States must always be free to delegate such authority to their political subdivisions." 105 S.Ct. at 1719 n. 6. In addition, the "anticompetitive injury" alleged by Plantation is the cost of treating indigent patients. That alleged "anticompetitive consequence" flows as directly and inevitably from the Hospital District's exercise of authority to limit the provision of its services, as the injury in *Town of Hallie* flowed from the city's decision to limit its sewer services. In short, so long as the charter states that the Hospital District "may care for and treat without charge patients who are found by the Board of Commissioners to be indigent," it logically follows that there exists a potential anticompetitive effect and injury.

In light of the preceding findings and the fact that the court has determined that there are no disputed material facts pertaining to this count of the Amended Complaint, the court finds that the defendant, North Broward Hospital District is entitled to summary judgment. Moreover, the state action question arguably presents a pure issue of law to be resolved by (1) identifying the conduct that plaintiff is challenging and (2) tracing it to the authority granted the local governmental activity. In a nutshell, the plaintiff wants to be reimbursed for the medical care they provide to indigent patients by the defendant and they want the defendant to accept transfer of the indigent patient once they are stabilized. The Hospital District operates under a charter which grants them discretionary authority to care for indigent patients. Since this discretion was given to the Hospital district by the Florida state legislative, and it follows that the discretionary activity could be anticompetitive, the defendant, North Broward Hospital District is entitled to immunity under the "state action" doctrine in light of *Town of Hallie*.

DONE AND ORDERED at Miami, Florida, this 14th day of September, 1985.

ORDER GRANTING DEFENDANT NORTH BROWARD HOSPITAL DISTRICT'S MOTION FOR DETERMINATION OF EQUAL PROTECTION STANDARD AND, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

■ This cause is before the court on defendant, North Broward Hospital District's Motion for Determination of Equal Protection Standard and, in the Alternative, for Summary Judgment. After careful consideration of the record in this matter and upon hearing oral argument, the court has determined that the appropriate standard of review is the rational basis test. Further, after applying the rational basis test to the defendant's policies and conduct, the court finds that the North Broward Hospital District is entitled to summary judgment on Counts V, VI, VII, and XI of the First Amended Complaint.

At the outset, the court would like to state that in so deciding the court is not ruling on the abstract issue of who, if anyone, has the ultimate responsibility for

the medical care of indigent persons arguably at the heart of this case. This case has been long and protracted.[1] In part because of the constant barrage of motions by the parties and in part because of the court's concern about the issues of great public interest which this case touches upon. The court today decides only that given the facts of this case, which the court finds undisputed as related to these counts, the Charter the Hospital District operates under, what we can infer the legislative intent to be, and the relevant law, that the defendant is entitled to summary judgment.

The counts which are the subject of this order form the basis of the plaintiff's equal protection claims against the defendant. The Supreme Court has made it clear that strict scrutiny is called for in two circumstances: (1) where the policy at issue deprives a select group of a "fundamental right," or (2) where it discriminates against a "suspect class." *See San Antonio School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). Neither exception is applicable in this case.

■ The Hospital District policies at issue in this case do not deprive anyone of a fundamental right. Fundamental rights are rights either "explicitly or implicitly guaranteed by the Constitution." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16 (1973). The "right" that plaintiff says is at issue in this case is a right to receive payment for hospital and medical care. The Supreme Court has not yet held that payment for medical care is a fundamental right guaranteed by the Constitution. In fact, the Supreme Court has held to the contrary. In *Maher v. Roe*, 432 U.S. 464, 469, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484 (1977), the Court held that "[The] Con-

stitution imposes no obligation on the states ... to pay any of the medical expenses of indigents."

■ Nor do the Hospital District's policies discriminate against a suspect class. Indigency is not a suspect class. The policies themselves are devoid of racial expression and there is no evidence of an underlying racial motive. No charge of racial motivation can withstand the fact that every year the North Broward Hospital District admits more than 5,000 indigent patients,[2] and does not discriminate on the basis of race in admitting those patients. It cannot be responsibly argued that members of minority groups are less well-represented among the 5,000 indigent patients per year that the Hospital District freely treats and admits than they are among the few who, by virtue of the Hospital District's policy, must continue their treatment at the private hospitals where that treatment began.

Before a government policy can be deemed "suspect" and subject to strict scrutiny, the Supreme Court has repeatedly affirmed that there must be both a pronounced discriminatory impact and a racially discrimination motive underlying the classification. *See Washington v. Davis*, 426 U.S. 229, 239–46, 96 S.Ct. 2040, 2047–51, 48 L.Ed.2d 597 (1976); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–68, 97 S.Ct. 555, 562–65, 50 L.Ed.2d 450 (1977). There is no evidence of racial motive in this case. In addition, Plantation does not present any evidence that the Hospital District's transfer policy has a discriminatory impact on members of any racial minority.

Accordingly, the proper standard of review to apply to the policies at issue is the rational basis standard not strict scrutiny analysis. In evaluating these policies under the rational basis standard, the court must bear in mind that the issue in this

---

1. At oral argument counsel conceded discovery had been completed.

2. During 1983 the Hospital District admitted 5,297 patients. That same year Plantation claims to have treated 38 indigents in its hospital.

motion for summary judgment is not whether the Hospital District's policies are the wisest possible policies or even the policies most precisely related to its primary purposes. *Vance v. Bradley,* 440 U.S. 93, 109, 99 S.Ct. 939, 948, 59 L.Ed.2d 171 (1979). Rather, in order for Plantation to prevail, this court must find that the facts upon which the policies are based "could not reasonably be conceived to be true by the governmental decisionmaker." *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 723, 66 L.Ed.2d 659 (1981) quoting *Vance, supra,* 440 U.S., at 111, 99 S.Ct. at 949. In short, the court must find that there is a rational and reasonable relationship between the challenged Hospital District policies and legitimate social, administrative, fiscal and legal goals.

The court finds that the Hospital District's transfer policy is rational as a matter of fiscal responsibility, medical practice, and medical ethics. The Hospital District's transfer policy conserves the Hospital District's fiscal resources. Conservation of a government entity's fiscal resources is a legitimate government purpose. *Mathews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976); *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970); *Bussey v. Harris,* 611 F.2d 1001, 1006 (5th Cir. 1980). The transfer policy conserves the Hospital District's fiscal resources because it limits the number of indigents who are treated at Hospital District hospitals. In so reducing costs, it frees the Hospital District's revenues to be used for other purposes authorized by its Charter such as hospital construction and improvement.

The prohibition on financially motivated transfers is also rational because it reduces the potential for patient suffering and loss of life. Avoidance of risk and harm to patients is a proper government objective. The Hospital District's prohibition on unnecessary financial transfers provides the safest, most prophylactic policy, and avoids the complication, expense, danger, and uncertainly of drawing intermediate lines.

The court does have reservations on the District's prohibition on financially motivated transfers when the indigent patient wants to transfer from the private hospital to the District hospital because transfer would result in decreased costs to the patient. Section 30 of the Charter states that "each hospital or clinic established under this Act shall be for the use and benefit of the residents of this District." This section goes on, however, to qualify the resident's "right" to the use of the District hospitals by making the "right" subject to the rules and regulations of the Board and making the care of indigents discretionary.

It is not the province of this court to substitute its philosophic opinion of who should provide medical care for indigents in the presence of statutory language which suggests that the Board has discretion to treat indigents. The court believes that this is an issue for the legislature to resolve. In addition, since the rational basis standard is appropriate on these counts, the court cannot say that the reasons asserted by the District for their policies are not rational and reasonable overall.

Finally, it is rational for a hospital to structure its transfer policies to reflect the highest standards of medical ethics. The Joint Committee on Hospital Accreditation (JCHA) suggests that where the transferring hospital has the ability to provide continued treatment, it should continue to do so. The JCHA standards provide that:

> unless extenuating circumstances are documented in the patients record, no patient shall be arbitrarily transferred to another hospital if the hospital where he is initially seen has the means for providing adequate care.

Further, up-until recently, the American College of Emergency Physicians (ACEP) explicitly prohibited financially motivated transfers of the kind that Plantation says are required by the United States Constitution:

Transfer of a patient from one facility and/or physician to another facility and/or physician should be only on the basis of medical necessity ... and should disregard socio-economic considerations.

On August 13, 1985, the American College of Emergency Physicians revisited the question of patient transfers, and promulgated new and updated policies in this area which *eliminate* the requirement that "socio-economic considerations" be disregarded. At the time this lawsuit was brought, however, the Hospital District was operating under the old guidelines. Second, the ACEP's policy statement does not explicitly state that patients *should* be allowed to transfer for financial reasons. Rather, there is an acknowledgement that sometimes patients are transferred because of economic considerations. In the same paragraph, the policy statement says "at times patients are transferred to receive the benefit of more appropriate facilities and/or services ..." If we accept plaintiff's argument on this issue, then we would also have to find that private hospitals should accept transfer of patients including the medically indigent when their services were "more appropriate" than the Hospital District's. The court doesn't think for a minute that plaintiff would agree to this. In short, at the time this lawsuit was filed the Hospital District was operating under the old ACEP guidelines. The equal protection issues are not going to turn on whose interpretation of the ACEP guidelines the court adheres to, and based on the financial consideration behind the District's policy, the court cannot say the policy is not rational.

The fact that the Hospital District has never established any form of subsidy program for private hospitals is also a rational "policy." The District's policy not to reimburse private hospitals for their care of indigent persons is rational because the policy has the effect of reducing Hospital District expenditures and conserving resources. Second, the Florida legislature

has given the Hospital District the legal power to "treat without charge" indigent patients in its hospitals. The legislature has not, however, given the Hospital District legal authority to set up a general welfare program to make cash payments to private hospitals.

Based on the preceding findings, it is

ORDERED AND ADJUDGED that the Hospital District's Motion for Summary Judgment on Counts V, VI, VII and XI is GRANTED.

ORDER GRANTING DEFENDANT BROWARD COUNTY'S MOTION FOR SUMMARY JUDGMENT AND SUGGESTION TO DISMISS REMAINING STATE CLAIMS OF PLAINTIFF'S AMENDED COMPLAINT

This cause is before the court on defendant, Broward County's Motion for Summary Judgment on Count VI and Suggestion to Dismiss Remaining State Claims of Plaintiff's Amended Complaint. After consideration of the record in this matter and upon hearing oral argument, it is ORDERED AND ADJUDGED that defendant, Broward County's Motion for Summary Judgment on Count VI is GRANTED. All remaining state claims are DISMISSED.

Count VI of plaintiff's Amended Complaint alleges that Broward County makes funds available to Hospital District hospitals for the cost of the treatment of the medically indigent while refusing to make funds available to private hospitals for their care of the indigent patient. The plaintiff alleges that this failure to reimburse deprives medically indigent persons of equal protection of the laws.

The court finds that there are no disputed issues of material fact pertaining to Count VI. Broward County does not reimburse private hospitals or Hospital District hospitals for the cost of providing care to the medically indigent. Broward County has established by the affidavit of Henry

R. Thompson, Director of the Primary Health Care Division, and through discovery that it does not reimburse the North Broward Hospital District for hospitalization of indigents.

█ Since the court finds that the County does not reimburse either Plantation or the Hospital District, plaintiff's denial of equal protection claim must fail. It is established that failure to operate any public program, for whatever reason, affects all people alike and cannot implicate the equal protection clause. *Palmer v. Thompson*, 403 U.S. 217, 224–25, 91 S.Ct. 1940, 1944–45, 29 L.Ed.2d 438 (1971). In addition, since Count VI is the only remaining federal claim against Broward County, the court will *not* exercise jurisdiction over the pendant state law claims. When all federal claims are dismissed before trial, state claims which are alleged should be dismissed as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Dismissal of the state claims is all the more appropriate in this case since the question of whether and to what extent a county is responsible for indigent hospitalization costs is awaiting resolution by the Florida Supreme Court in *Dade County v. American Hospital of Miami, Inc.*, Case No. 66, 689.