GARY COMMUNITY MENTAL HEALTH CENTER, INC. and Nineteen (19) Cases, Petitioners-Appellants,

v.

INDIANA DEPARTMENT OF PUBLIC WELFARE and Lake County Department of Public Welfare, Respondents-Appellees.

No. 45A03–8610–CV–304.

Court of Appeals of Indiana, Third District.

May 28, 1987.

---

Douglas M. Grimes, Gary, for petitioners-appellants.

Maria Luz Corona, Karen P. Pulliam-Willis, Gary, for respondents-appellees.

GARRARD, Presiding Judge.

### Facts

In 1977, Gary Community Mental Health Center (GCMHC) entered into an agreement with St. Mary Medical Center (medical center) whereby GCMHC established an inpatient psychiatric facility within the medical center building. Pursuant to this agreement, GCMHC leased a wing of the medical center building and assumed sole responsibility and authority to administer

and implement the mental health inpatient treatment program. The medical center's role was that of lessor of the hospital wing. (*See* Record, p. 45).

Nineteen mental patients who had received treatment at the GCMHC inpatient facility within the medical center submitted applications to Lake County Department of Public Welfare (LCDPW) for payment for such services under the Hospital Care for the Indigent Act, IC 12–5–6–1 *et seq.* The LCDPW refused to consider the nineteen applications because the facility which administered the treatment, namely GCMHC, was not a hospital as defined by IC 16–10–1–6(a).[1] GCMHC and the nineteen applicants appealed the decision of the LCDPW to an administrative law judge and subsequently to the Indiana Department of Public Welfare (IDPW), each of whom affirmed the decision of the LCDPW.

On May 19, 1986, GCMHC and the nineteen applicants filed a verified petition for review in the Lake Superior Court. Both the IDPW and the LCDPW (the departments) filed responses. The trial court affirmed the departments' decisions denying review under the Act. GCMHC and the nineteen applicants now appeal to this court.

### Issues

The following issues are presented by this appeal:

I. Whether medical services eligible for payment under the Act must be provided "by a hospital" rather than merely "in a hospital."

II. Whether the eligibility requirements under the Hospital Care for the Indigent Act violate the equal protection and due process guarantees of the Indiana and United States Constitutions.

We affirm.

### Discussion

#### I.

Initially GCMHC contends that the departments' refusal to consider the nineteen applications of the mental patients was based on an improper application of the Hospital Care for the Indigent Act, IC 12–5–6–1 *et seq.* The specific provision at issue sets forth the criteria for eligibility under the Act and provides:

"Eligibility for assistance

Sec. 2.1(a) A resident of Indiana who meets the income and resource standards established by the state department of public welfare under subsection (c) is eligible for assistance to pay for any part of the cost of care provided *in a hospital in Indiana* that was necessitated after the onset of a medical condition that manifested itself by symptoms of sufficient severity that the absence of immediate medical attention would probably result in:

(1) placing the person's life in jeopardy;

(2) serious impairment to bodily functions; or

(3) serious dysfunction of any bodily organ or part."

IC 12–5–6–2.1 (West Supp.1986–87) (our emphasis). GCMHC argues that the language "in a hospital in Indiana" does not require that the medical care for which financial assistance is sought be rendered

---

**1.** IC 12–5–6–1 provides that a "hospital" for purposes of the Hospital Care for the Indigent Act is defined in IC 16–10–1–6 which provides:

"Sec. 6. (a) 'Hospital' within the meaning of this chapter shall be defined to be any institution, place, building, or agency represented and held out to the general public as ready, willing and able to furnish care, accommodations, facilities, and equipment for the use, in connection with the services of a physician, of persons who may be suffering from deformity, injury, or disease, or from any other condition, from which medical or surgical services would be appropriate for

care, diagnosis or treatment. The term 'hospital' as used in this chapter does not include convalescent homes, boarding-homes, or homes for the aged; nor does it include any hospital or institution specially intended for use in the diagnosis, care and treatment of those suffering from mental illness, mental retardation, convulsive disorders, or other abnormal mental conditions; nor does it include offices of physicians where patients are not regularly kept as bed patients."

It is important to note that GCMHC concedes that its inpatient facility within the medical center is not a hospital within this section.

by the hospital itself. Instead, GCMHC claims, the phrase "in a hospital" is locational and merely requires that the medical care be provided within the physical structure of a hospital. GCMHC concludes that since the mental treatment which the nineteen applicants received was rendered inside the physical confines of a hospital, then review of the nineteen applications for financial assistance under the Act should have been granted.

The departments respond, however, that the eligibility requirements under the Act and the language "in a hospital" must be read in conjunction with other sections of the Act. The departments urge that an appropriate reading of the statute as a whole reveals that the legislature intended that for eligibility under the Act, the medical treatment must be for physical injury or disease and must be provided "by" the hospital itself rather than merely within its walls. We agree.

█ If the language of a statute is clear and unambiguous it is not subject to judicial interpretation. *Indiana Department of State Revenue v. Estate of Smith* (1984), Ind.App., 460 N.E.2d 1263, 1265. Where the statutory language is reasonably susceptible to more than one construction, we will construe the statute to determine the apparent legislative intent. *Frame v. South Bend Community School Corp.* (1985), Ind.App., 480 N.E.2d 261, 263. However, a statute is to be interpreted as a whole, giving common and ordinary meaning to the words used and not overemphasizing a strict literal or selective reading of individual words. *Foremost Life Insurance Co. v. Department of Insurance* (1980), 274 Ind. 181, 409 N.E.2d 1092, 1096. Interestingly, both GCMHC and the departments claim that the Act is clear and unambiguous. Nevertheless, we find the parties' argument illustrative of the Act's susceptibility to two or more constructions. Thus, judicial interpretation of the Act and, specifically, the language "in a hospital" is warranted.

█ A brief examination of several sections of the Act reveals the legislature's intent that medical care within the Act be rendered "by a hospital" and for physical injury, disease or defect. For example, IC 12-5-6-5, which governs investigation procedures for the determination of eligibility, provides in pertinent part:

"Investigation; determination of eligibility

Sec. 5(a) A county department of public welfare, upon receipt of an application of a patient admitted to a hospital, shall promptly investigate to determine the patient's eligibility under this chapter. The *hospital rendering medical care to the patient* shall provide information which it has which would assist in the verification of indigency of a patient and if a hospital provides such information it is immune from civil and criminal liability for divulging that information."

(our emphasis). Similarly, IC 12-5-6-11, which governs the responsibility for medical costs in a county with a health and hospital corporation, provides in relevant part:

"[H]owever, the *hospital providing treatment* shall transfer the patient to a hospital operated by the health and hospital corporation as soon as the attending physician determines that the patient's medical condition permits such a transfer without injury to the patient. If a hospital owned by the health and hospital corporation is *unable to care for or otherwise treat a patient* at the time a transfer is requested by the *hospital initiating treatment,* such hospital *may continue to treat the patient* until his discharge, and the costs of treatment shall be borne by the county department of public welfare of the county."

(our emphasis). The language in these sections clearly indicates that the Indiana legislature intended that medical care within the Act be rendered "by a hospital" rather than simply "in a hospital." We hold that the departments properly applied the Act and correctly denied review of the nineteen applications.[2]

### II.

GCMHC also asserts that the departments' refusal to review the nineteen appli-

---

**2.** The specific exclusion of mental health institu- tions from the definition of "hospital," *supra* at

cations violated the equal protection and due process guarantees of the Indiana and United States Constitutions.[3] Specifically, GCMHC claims that the departments' denial of benefits under the Act discriminated against a suspect class, indigents suffering from mental illness, and impinged on the applicants' fundamental right to medical treatment. Our finding that the departments' application of the Act was correct converts GCMHC's argument into a direct constitutional challenge to the Act's eligibility requirements. In any case, GCMHC's constitutional claims are simply contrary to law and must fail.

■ Fundamental rights are those rights either "implicity or explicitly guaranteed by the Constitution." *San Antonio School District v. Rodriguez* (1973), 411 U.S. 1, 33–4, 93 S.Ct. 1278, 1296–7, 36 L.Ed.2d 16. The right to payment for hospital and medical treatment has not been recognized as a fundamental right guaranteed by the Constitution. In fact, the United States Supreme Court has held that "[The] Constitution imposes no obligation on States ... to pay any of the medical expenses of indigents." *Maher v. Roe* (1977), 432 U.S. 464, 469, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484; *see also Hospital Development and Service Corp. v. North Broward Hospital District* (S.D.Fla.1985), 619 F.Supp. 535, 539. Thus, GCMHC's claim of a fundamental right to medical treatment must fail.

■ Furthermore, neither indigency nor mental illness are suspect classifications justifying strict judicial scrutiny. *Maher v. Roe, supra*, 432 U.S. at 470–1, 97 S.Ct. at 2380–1, 53 L.Ed.2d at 484 (indigency); *City of Cleburne v. Cleburne Living Center* (1985), 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (mental illness); *see also Clark v. Prichard* (5th Cir.1987), 812 F.2d 991, 995; and *United States ex rel. Weis-*

*miller v. Lane* (7th Cir.1987), 815 F.2d 1106. Hence, GCMHC's "suspect classification" claim is without merit. We find that this case involves no fundamental rights or suspect classifications.

■ Social and economic legislation, such as the Hospital Care for the Indigent Act, which neither impinges on fundamental rights nor employs suspect classifications, must be upheld against constitutional attack when legislative means are rationally related to a legitimate governmental purpose. Such legislation is clothed with a presumption of rationality which can be overturned only by a clear showing of arbitrariness and irrationality. *Hodel v. Indiana* (1981), 452 U.S. 314, 331, 101 S.Ct. 2376, 2386, 69 L.Ed.2d 40; *Sidle v. Majors, supra.* [4] The burden of overcoming this presumption is on the challenger and all doubts are resolved against him. *Sidle v. Majors, supra*, 341 N.E.2d at 766.

■ The apparent purpose underlying the Hospital Care for the Indigent Act is to make cost-free emergency medical care readily available to indigent persons who suffer serious physical injury, disease or defect. We find the Act's eligibility requirements to be rationally related to accomplishing this legislative goal. While in its brief GCMHC alleges that in the past the departments allowed benefits under the Act to applicants similar to those at issue, we find nothing in the record to support this allegation. GCMHC has simply failed to sustain its burden of showing arbitrariness in the departments' application of the Act. Hence, we affirm.

Affirmed.

HOFFMAN and YOUNG, JJ., concur.

---

n. 1, provides additional support for the correctness of the departments' refusal to consider the applications of the mental patients.

3. The equal protection clauses of the Indiana and United States Constitutions are the same in that both are designed to prevent the disproportionate distribution or denial of benefits to any group. *Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763, 767.

4. Substantive due process analysis of social legislation such as the statute in the present case is essentially the same as equal protection analysis, i.e., whether there is a rational basis underlying the legislation in question. *Cospito v. Heckler* (3d Cir.1984), 742 F.2d 72, 84, *cert. denied* (1985), 471 U.S. 1131, 105 S.Ct. 2665, 86 L.Ed.2d 282.