Karren N. PAZZAGLIA, Appellant,

v.

REVIEW BOARD OF the INDIANA DE-PARTMENT OF EMPLOYMENT AND TRAINING SERVICES, Sandra D. Leek, George H. Baker and Mark T. Robbins, as members of the Review Board, and J & J Packing Company, Appellees.

No. 93A02–9203–EX–125.

Court of Appeals of Indiana, Second District.

Feb. 15, 1993.

Transfer Denied May 12, 1993.

Crystal Francis, Kathryn M. Williams, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellees.

SULLIVAN, Judge.

Karren Pazzaglia appeals the decision of the Review Board of the Indiana Department of Employment and Training Services (Board) denying her claim for unemployment benefits. Upon appeal, Pazzaglia challenges the constitutionality of I.C. 22–4–15–1(c)(1) (Burns Code Ed.1992), the provision cited by the Board as the basis for denying Pazzaglia's claim.

We affirm.

The Findings of Fact made by the administrative law judge and approved by the Board are as follows:

"The claimant [Pazzaglia] was employed for about one and one-half years with J and J Packaging Company in Brookville, Indiana. At the time of separation, the claimant was a full-time Line Leader. The claimant earned $5.[00] per hour and had no insurance benefits. The claimant drove about forty miles to work.

The claimant left employment with J and J Packaging Company because she had secured a job that she believed would be permanent and full-time with Ford Electronics. This job paid $7.[00] per hour, was five miles from the claimant's home, provided insurance benefits, paid vacations, sick days, educational benefits, and opportunity for advancement. The claimant began working for the new employer on October 28, 1991, but was laid off after working one week. Initially, the claimant was told that the layoff would be for a couple of weeks, but the claimant had not yet been recalled at the time of the unemployment hearing on December 30, 1991." Record at 28.

Based upon the foregoing, the Board upheld the Administrative Law Judge's conclusion that I.C. 22–4–15–1(c)(1) disqualifies Pazzaglia from receiving unemployment benefits.

■ The error claimed in the instant case does not involve the Board's resolution of issues of fact, but rather involves the Board's interpretation of, and the constitutionality of, I.C. 22–4–15–1(c)(1). Therefore, the appeal involves only questions of law. Upon review, this court is not bound by the agency's interpretation of law, but must determine whether the agency did correctly interpret the law and did correctly apply the applicable law. *Hamilton County Department of Public Welfare v. Smith* (1991) 5th Dist.Ind.App., 567 N.E.2d 165, 168.

I.C. 22–4–15–1 reads, in pertinent part:

"[A]n individual who has voluntarily left his employment without good cause in connection with the work or who was discharged from his employment for just cause is ineligible for waiting period or benefit rights for the week in which the disqualifying separation occurred and until he has earned remuneration in employment equal to or exceeding the weekly benefit amount of his claim in each of eight (8) weeks.

\*     \*     \*     \*     \*     \*

(c) The disqualifications provided in this section shall be subject to the following modifications:

(1) An individual shall not be subject to disqualification because of separation from his prior employment if he left to accept with another employer previously secured permanent full-time work which offered reasonable expectation of betterment of wages or working conditions and thereafter *was employed on said job for not less than ten (10) weeks* or if, having been simultaneously employed by two (2) employers, he leaves one (1) such employer voluntarily without good cause in connection with the work but remains in employment with the second employer for at least ten (10) weeks subsequent to leaving the first employer, or if he left to accept recall made by a base-period employer." (Emphasis supplied.)

The Board denied Pazzaglia's claim for benefits because she had not been working at Ford Electronics, her successor employer, for a period of at least ten weeks prior to being laid off.

■ Initially, we address Pazzaglia's contention that the Board's decision may be appropriately reversed without addressing the provision's constitutionality, upon a determination that Pazzaglia left her former employment for good cause.[1] In such case, Pazzaglia argues, we need not address the exceptions set out in I.C. 22–4–15–1. However, this conclusion could only result if we were to myopically focus upon subsection (a) of that provision, while ignoring subsection (c). Subsection (a) states:

> "With respect to benefit periods established on and after July 6, 1980, an individual who has voluntarily left his employment *without good cause in connection with the work* or who was discharged from his employment for just cause is ineligible for waiting period or benefit rights for the week in which the disqualifying separation occurred...."
> (Emphasis supplied).

Pazzaglia argues that acceptance of better employment is "good cause" within the meaning of subsection (a), and that therefore subsection (c) is not triggered. Even accepting Pazzaglia's interpretation of subsection (a),[2] we cannot ignore the plain language of subsection (c), which expressly applies to Pazzaglia's precise situation. Therefore, Pazzaglia's eligibility for unemployment benefits must be determined under the provisions of subsection (c).

■ Pazzaglia claims that the statute is violative of the equal protection clause of the Fourteenth Amendment of the Indiana and United States Constitutions, as applied to persons employed for less than ten weeks at a subsequent employer. When determining whether state legislation violates the Fourteenth Amendment's equal protection guarantee, the level of scrutiny applied depends upon the classification made in the challenged legislation. In the instant case, Pazzaglia concedes that the classification made is not suspect, nor is a fundamental right implicated. In such cases, we apply the rational basis analysis. A classification is deemed valid if determined to be rationally related to a legitimate government purpose. *Gary Community Mental Health Center, Inc. v. Indiana Department of Public Welfare* (1987) 3d Dist.Ind.App., 507 N.E.2d 1019, 1023. Under this standard a statute is presumed to be valid, and this presumption operates even when the law, in fact, results in some inequality. *Sobieralski v. City of South Bend* (1985) 4th Dist.Ind.App., 479 N.E.2d 98, *trans. denied.*

■ This court has previously identified the State's purpose in enacting the challenged statute as promoting employment stability on a state-wide basis. *See, e.g., Vicari v. Review Board of Indiana Department of Employment and Training Services* (1991) 3d Dist.Ind.App., 568 N.E.2d 1061. This obviously is a legitimate purpose. The question posed in the instant appeal is whether the ten-week provision is rationally related to that legitimate purpose.

Indiana Code 22–4–15–1 is a disqualification statute defining those who are disqual-

---

1. In support of her argument, Pazzaglia offers policy reasons in favor of construing the provision in question, and indeed all parts of the Act, in order that more individuals be declared eligible for benefits. In effect, Pazzaglia invites us to rewrite I.C. 22–4–15–1. Responding to a similar request, this court previously stated:
   "The Appellant calls our attention to the social and the original intent of the Act in question. We agree with this aspect of the Appellant's contention. However, we cannot amend or by judicial construction change the clear mandate of the legislature as to the ten week provisions.... We are of the opinion that those interested in this type of employees seek their relief from the legislature in order to remedy this situation." *Jones v. Review Board of Indiana Employment Securities Division* (1968) 143 Ind.App. 64, 238 N.E.2d 291, 294.

2. Subsection (a) excludes from receiving benefits those who have left without good cause *not connected to the work*. Conversely, those who leave for good cause connected to the work may receive benefits. Although leaving to better one's employment is "good cause," that cause is not related to the work of the former employer; Pazzaglia thus does not qualify under subsection (a).

ified from receiving waiting period or benefit rights for the designated time period. Subsection (c)(1) provides an exception to that group previously disqualified under subsection (a). Persons seemingly disqualified under subsection (a), that being in the instant case those who have voluntarily left employment without good cause connected to the work, are not disqualified if they "left to accept with another employer previously secured *permanent* full-time work which offered reasonable expectation of betterment of wages or working conditions and thereafter was employed on said job for not less than ten (10) weeks...." In this context, the ten-week period in the statute defines the meaning of the term "permanent"; that is, "permanent" full-time work means work which lasts for at least ten weeks. As such, the provision is not fatally flawed merely because application of the ten-week time period produces different results when applied to two parties similarly, but not identically, situated (such as between one who worked for the subsequent employer for nine weeks, and one who worked for eleven). As this court has stated, "few statutory classifications are entirely free from the criticism that they sometimes produce inequitable results." *S.V. v. Estate of Bellamy* (1991) 2d Dist.Ind.App., 579 N.E.2d 144, 148.

In summary, promoting stability of employment is a legitimate state purpose, and requiring that an individual secure "permanent"—as that term is defined—subsequent employment before leaving a stable job is rationally related to that legitimate purpose.

Moreover, this court has recently upheld the constitutionality of the ten-week provision in three separate decisions. Our Third District addressed an almost identical challenge to I.C. 22–4–15–1 in *Vicari v. Review Board of Indiana Department of Employment and Training Services* (1991) 3d Dist.Ind.App., 568 N.E.2d 1061, *trans. denied*. In *Vicari*, the court identified the provision's goal as encouraging employment stability, and held that I.C. 22–4–15–1 is rationally related to that legitimate purpose.[3] More recently still, our Third District again upheld the constitutionality of the ten-week provision against an equal protection challenge in *Wade v. Review Board of Indiana Department of Employment and Training Services* (1992) 3d Dist.Ind.App., 599 N.E.2d 630, 633. Finally, our Second District upheld the provision's constitutionality in *Lafferty v. Review Board of Indiana Department of Employment and Training Services* (1992) 2d Dist.Ind.App., 600 N.E.2d 1378. We decline Pazzaglia's invitation to disregard our prior precedent.

The decision of the Review Board is affirmed.

FRIEDLANDER and CHEZEM, JJ., concur.

---

**3.** The *Vicari* court also noted that I.C. 22–4–15–1 prevents excessive job-hopping, which could be interpreted as approval of that as an identified, legitimate state interest. Although these two concepts—preventing job-hopping and promoting job stability—are related, they are not one and the same. The fact that encouraging one necessarily discourages the other does not make both proper objects of legislative focus. The ten-week provision may provide a reason for not voluntarily leaving one job to begin another, but such is an incidental result, not the focus, of the ten-week provision. The Act's purpose therefore should not be understood to include discouraging job mobility, especially when changing to a better job.