**ST. MARY'S MEDICAL CENTER, OF EVANSVILLE, INC.,**
Appellant–Plaintiff,

v.

**WARRICK COUNTY, Indiana, By and Through its BOARD OF COMMISSIONERS OF WARRICK COUNTY, Indiana, the Sheriff of Warrick County, Indiana,**
Appellees–Defendants.

No. 87A01–9509–CV–306.

Court of Appeals of Indiana.

Oct. 28, 1996.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

St. Mary's Medical Center of Evansville, Inc., ("St.Mary's") appeals from the trial court's declaratory judgment in favor of Warrick County, by and through its Board of County Commissioners and the Sheriff of Warrick County (collectively the "County Sheriff"). St. Mary's filed its petition for declaratory judgment requesting an adjudication that the County Sheriff had the duty to pay for hospital care provided by St. Mary's to a prisoner while that prisoner was under the custody and control of the County Sheriff. The trial court denied St. Mary's petition for declaratory judgment and concluded that the County Sheriff was not responsible for the cost of the medical services.[1]

We reverse.

### ISSUE

Whether the trial court erred when it entered declaratory judgment and concluded that St. Mary's was not entitled to be reimbursed by the County Sheriff for the cost of medical services provided to a prisoner.

### FACTS

St. Mary's is a not-for-profit corporation with its principal place of business located in Evansville. On or before August 7, 1990, Erik L. Lutton was incarcerated in the Warrick County Jail awaiting court proceedings. On August 7, 1990, Lutton was transferred from the Warrick County Jail to the Warrick Hospital for the purpose of treating injuries he sustained as a result of a suicide attempt. Thereafter, Warrick Hospital transferred Lutton to St. Mary's because he required specialized services not normally available at Warrick Hospital. Lutton died on August 13, 1990, while a patient at St. Mary's.

The County Sheriff paid Warrick Hospital for the care rendered to Lutton while he was a patient at that hospital. However, the County Sheriff refused to pay St. Mary's for

Gary K. Price, David A. Guerrettaz, Ziemer, Stayman, Weitzel & Shoulders, Evansville, for Appellant.

Terry A. White, Olsen, Labhart, White & Hambidge, Evansville, for Appellees.

1. We heard oral argument on September 17, 1996, at Vincennes University.

the medical services it had provided to Lutton. As a patient at St. Mary's, Lutton incurred medical expenses in the sum of $16,341.60.

Thereafter, on August 31, 1993, St. Mary's filed its petition for declaratory judgment and sought an adjudication that the County Sheriff had a duty to pay for the hospital care that St. Mary's provided to Lutton while he was in the custody and control of the County Sheriff. The County Sheriff responded that St. Mary's was obligated, yet failed, to seek payment from the Department of Public Welfare. Following a series of briefs filed by both parties and stipulations to the relevant facts, the trial court denied St. Mary's petition for declaratory judgment and concluded that the County Sheriff was not responsible for Lutton's medical expenses. St. Mary's now appeals from that decision.

## DISCUSSION AND DECISION

■ Indiana Code § 36–2–2–24 provides that the county executive "shall establish and maintain ... a county jail...." By statute, the county sheriff is required to "take care of" the county jail and its prisoners. IND. CODE § 36–2–13–5(a)(7). It is well-settled that prisoners are entitled to medical care, and this court has recognized that a sheriff has a duty to exercise reasonable care to preserve his prisoner's health. *Health and Hosp. Corp. v. Marion County,* 470 N.E.2d 1348, 1358 (Ind.Ct.App.1984). This rule is rooted in the United States constitution and applies even when the prisoner is a pretrial detainee. *Id.* Such a rule is mandated by humane concern for those unable to fend for themselves. *Id.* at 1359.

■ The County Sheriff argued, and the trial court agreed that, although a sheriff is generally responsible for the welfare of prisoners, St. Mary's was required to seek reimbursement for services provided to Lutton from the Department of Public Welfare pursuant to the Hospital Care For the Indigent Act ("HCI"), Indiana Code § 12–16–3 *et seq.,* rather than seek payment from the Sheriff. The purpose underlying the legislature's enactment of the HCI program is to make cost-free emergency medical care readily available to indigent persons who suffer serious physical injury. *Gary Community Mental Health Ctr. v. Indiana Dep't of Pub. Welfare,* 507 N.E.2d 1019, 1023 (Ind.Ct.App.1987).

Indiana Code § 12–16–3–1 delineates the medical criteria an individual must satisfy to qualify for HCI benefits. That statute provides in relevant part:

(a) An Indiana resident who meets the income and resource standards established by the division under section 3 of this chapter is eligible for assistance to pay for any part of the cost of care provided in a hospital in Indiana that was necessitated after the onset of a medical condition that was manifested by symptoms of sufficient severity that the absence of immediate medical attention would probably result in any of the following:

(1) Placing the individual's life in jeopardy.

(2) Serious impairment to bodily functions.

(3) Serious dysfunction of a bodily organ or part.

IND.CODE § 12–16–3–1(a).

■ In entering its declaratory judgment in favor of the County Sheriff, the trial court relied upon our supreme court's decision in *Lutheran Hosp. of Fort Wayne, Inc. v. Dep't of Pub. Welfare,* 571 N.E.2d 542, 544 (Ind. 1991). In *Lutheran Hospital,* an inmate was transferred from the Noble County Jail to Lutheran Hospital under a 72–hour emergency admittance because the inmate had attempted to commit suicide twice in the previous two days. *Lutheran Hosp.,* 571 N.E.2d at 543. After the inmate was subsequently discharged, the Hospital filed for benefits under HCI. In considering whether the inmate met the medical eligibility requirements of HCI, the supreme court determined that the inmate's suicide attempts satisfied the emergency medical situation contemplated by HCI in that such attempts appeared to be "placing a person's life in jeopardy." *Id.* at 545; IND.CODE § 12–16–2–1(a)(1). Additionally, the court determined that the patient's status as an inmate of the county jail did not preclude the appli-

cability of HCI for services provided to him.[2] Our supreme court remanded the case for the trial court to determine whether the inmate met the financial eligibility requirements of HCI.

Although the facts are similar, the trial court's reliance on *Lutheran Hospital* as dispositive of the issue presented here is misplaced. *Lutheran Hospital* merely considered whether an inmate of a county jail, who required services due to attempted suicides, satisfied the eligibility requirements of HCI. The *Lutheran Hospital* court made no determination of the inmate's financial eligibility but held only that the fact the patient was a county jail inmate did not render him ineligible for HCI coverage. The court neither considered nor concluded that the Hospital was required to seek HCI reimbursement for medical care rendered to inmates.

Nevertheless, in support of its decision that the Hospital was required to seek reimbursement from HCI rather than from the County Sheriff, the trial court relied on Indiana Code § 12–16–3–4 which states:

> A hospital shall provide a patient, and if the patient is not able to understand the statement, the patient's representative, with a statement of the eligibility and benefits adopted by the division if, inter alia, the hospital has reason to believe the patient may be indigent.

The court found that St. Mary's, through its staff physician, Noel Martin, knew that Lutton was a jail inmate who had attempted suicide. Such information, the court stated, provided St. Mary's with "reason to believe" that Lutton may be indigent. *See* IND. CODE § 12–6–3–4.

■ The trial court found specifically that the parties did not stipulate to Lutton's financial status, and neither party directs this court to any evidence that Lutton was indigent. Thus, the question becomes whether Lutton's status as a jail inmate who had attempted suicide supports the conclusion that St. Mary's had reason to believe Lutton may have been indigent. Neither the stipulated facts nor the record contains a factual basis to sustain a determination that prisoners who attempt suicide are indigent per se. *See Health and Hosp. Corp.*, 470 N.E.2d at 1359. We decline to hold as a matter of law that a hospital "has reason to believe" that every prisoner "may be indigent" and is required to apply for HCI benefits merely because a prisoner who attempts suicide later becomes a patient. Accordingly, we cannot agree with the Sheriff that St. Mary's only recourse was to seek reimbursement from HCI and that St. Mary's has no claim against the Sheriff.[3]

In *Health and Hospital*, this court considered precisely the issue of whether the hospital or the county sheriff has a duty to pay for medical services and hospital care rendered to prisoners. *Health and Hosp. Corp*, 470 N.E.2d at 1359. We held that it is the duty of the sheriff to pay the hospital for medical and hospital expenses incurred on behalf of prisoners. *Id.* at 1360. Such conclusion was grounded in the legal principle that the sheriff has a statutory duty "to take care of" the prisoners. *Id.* at 1359. We reasoned that on the basis of quasi-contract the sheriff should pay for medical services rendered by the hospital as the sheriff clearly is required to provide medical services to prisoners and receives a benefit from the hospital when services are rendered to inmates. *Id.* at 1360.

■ Similarly, we hold that, as between St.Mary's and the County Sheriff, the County Sheriff is responsible for the cost of medical services provided to Lutton. St. Mary's was not obligated to seek HCI benefits as it had no reason to believe that Lutton "may"

2. HCI specifically excludes "inmates and patients of institutions of the department of correction, the state board of health, or the department of mental health." IND.CODE § 12–16–2–5. However, similar to the inmate in *Lutheran Hospital*, Lutton is not excluded under the statute since his status as an inmate of a county jail is not that of an inmate of the Department of Correction. *Lutheran Hosp.*, 571 N.E.2d at 545.

3. A hospital must file the application for HCI benefits within 30 days after the patient has been admitted to the hospital unless the patient is medically unable and the next of kin or legal representative is unavailable. IND.CODE § 12–16–4–2. Here, the time period to apply for benefits has passed.

have been indigent.[4] Contrary to the trial court's conclusion, sheriffs will not be encouraged to ignore the serious health problems of individuals in their custody if required to pay for those medical services. Sheriffs are required by statute to "take care of" their prisoners and owe a duty to exercise reasonable care to preserve the health of prisoners, which includes summoning medical aid and providing appropriate medical aid. *See id.* at 1358–59.

The legislature's purpose in enacting HCI was to provide cost-free emergency medical care to indigent persons, and the text of the statute manifests that intention. *Gary Community Mental Health Ctr.*, 507 N.E.2d at 1023. However, there is nothing in the text of the HCI statute to indicate that it was intended as a device to relieve the County Sheriff of his legal duty to pay for medical care. To do as suggested by the County Sheriff would require a hospital to apply for HCI benefits each time an inmate receives emergency medical treatment, whether or not the hospital has reason to believe that the person is indigent. There is no such requirement in the statute.

As we noted earlier, the County Sheriff paid Warrick Hospital for the care rendered to Lutton but then refused to pay St. Mary's. We recognize the inconsistency of the County Sheriff's position in this case and emphasize that the Sheriff cannot have it both ways. The County Sheriff cannot pay Warrick Hospital for the emergency care rendered while at the same time maintain that he has no duty to pay St. Mary's for the costs of its emergency services based upon the premise that the same prisoner may have been indigent and eligible for HCI coverage. If we were to agree with the County Sheriff that a hospital is required to seek HCI benefits when a prisoner attempts suicide, then both Warrick Hospital and St. Mary's would presumably be required to seek reimbursement from HCI. We cannot approve the

result advocated by the County Sheriff which would allow him to pick and choose which hospital to reimburse. As in *Lutheran Hospital*, we hold that under these circumstances a hospital may apply, but is not required as a matter of law to apply, for HCI benefits when a sheriff brings an inmate to the hospital for medical care. However, where a hospital is placed on actual or inquiry notice that a prisoner may be indigent, the HCI statute applies, and a hospital is not relieved of its responsibility to seek HCI benefits merely because a sheriff has a duty to pay for a prisoner's medical care.

The trial court erred when it entered declaratory judgment and concluded that St. Mary's was not entitled to have the cost of the medical services provided to Lutton paid by the County Sheriff. As we noted in *Health and Hospital*, whether the County Sheriff has recourse to seek reimbursement from the prisoner, the prisoner's estate or from other public sources are issues not presented here.

Reversed.

ROBERTSON and BAKER, JJ., concur.

---

4. Moreover, we find no merit to the Sheriff's contention that HCI was enacted after our decision in *Health and Hosp. Corp.* to relieve the Sheriff of his responsibility to pay for medical services. HCI was enacted in 1981, and the *Health and Hosp. Corp.* opinion was written in 1984. The *Health and Hosp. Corp.* opinion itself refers to HCI. *Health and Hosp. Corp.*, 470 N.E.2d at 1356 n. 9. Subsequent changes in the statute do not support the Sheriff's argument that he the HCI statute has relieved him of his burden to provide and pay for a prisoner's medical care.