**NORTHEAST INDIANA COLON & RECTAL SURGEONS,**
Appellant–Plaintiff,

v.

**ALLEN COUNTY COMMISSIONERS and Allen County Sheriff's Department,** Appellees–Defendants.

No. 02A04–9606–CV–259.

Court of Appeals of Indiana.

Dec. 17, 1996.

Rehearing Denied Feb. 5, 1997.

---

Jack E. Roebel, Fort Wayne, for Appellant.

John O. Feighner, Assistant Allen County Attorney, Fort Wayne, for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff-Appellant Northeast Indiana Colon and Rectal (Northeast) appeals from the adverse judgment in favor of the Allen County Sheriff's Department (Sheriff).

We affirm.

### ISSUE

Northeast presents one issue for our review, which we restate as follows:

Whether the Sheriff is responsible to pay medical costs for a preexisting condition of an inmate under Ind.Code 36–2–13–5 when the Sheriff gave notice to the appellant to bill the inmate directly.

### FACTS AND PROCEDURAL HISTORY

On May 22, 1993, Arden Lancaster (Lancaster) was incarcerated in the Allen County Jail. Lancaster's initial medical exam by the jail revealed no health problems. A few weeks later, Lancaster complained to the jail's nurse that he was experiencing rectal bleeding. The jail's nurse scheduled an appointment for Lancaster to meet with one of

Northeast's physicians. A transportation request form was filled out by the jail's nurse. The top of the form stated that the inmate was paying at his "own expense".

The transportation request form which stated that Lancaster would pay at his own expense was actually given to Northeast's physician during Lancaster's examination. In fact, the doctor's findings and recommendations for Lancaster were written on the transportation request form. Also, nurses's notes from Northeast on July 29, 1993, stated that Lancaster was "self pay—no insurance—bill pt. (patient) thru jail."

The doctor determined that the cause of the rectal bleeding was internal hemorrhoids. Lancaster had previously had problems with hemorrhoids. On August 9 and September 1, 1993, the doctor from Northeast performed surgery on Lancaster to remove the hemorrhoids and remedy the situation. Northeast seeks the sum of $1,385.00 plus pre-judgment interest from the Sheriff for the medical treatments given to Lancaster.

## DISCUSSION AND DECISION

Northeast contends that the Sheriff is required to pay for the medical care that it provided to Lancaster, an inmate. The sheriff shall "take care of" the county jail and the prisoners there. Ind.Code 36–2–13–5(a)(7). It is well settled that prisoners are entitled to medical care, and this court has recognized that a sheriff has a duty to exercise reasonable care to preserve a prisoner's health. *Health and Hosp. Corp. v. Marion County,* 470 N.E.2d 1348, 1358 (Ind.Ct.App. 1984), *reh'g denied, trans. denied.* Whether the Sheriff provided the inmate with reasonable medical care is not an issue. Lancaster's medical condition was treated by a physician at the earliest possible time. Therefore, we must decide whether the Sheriff has financial responsibility for an inmate's pre-existing medical condition where sufficient notice is given to the physicians that the inmate will pay for treatment himself.

■ Determining whether a sheriff is financially responsible for a pre-existing medical condition is one of first impression for this court. This court has held on several different occasions that a sheriff is financially responsible for medical conditions arising during detention of an inmate. *St. Mary's Medical Center, of Evansville, Inc. v. Warrick County,* 671 N.E.2d 929 (Ind. Ct.App. 1996) (The sheriff was financially responsible to a hospital for treating injuries that occurred as a result of a suicide attempt while in jail.) Northeast contends that they have no duty to provide non-reimbursed care to inmates of a county jail and that the Sheriff should be held accountable. The sheriff's duty to care for the prisoners includes the duty to pay for medical treatment. *Health and Hosp. Corp,* 470 N.E.2d at 1359. Nowhere in any Indiana cases or statutes have we found that the sheriff has a duty to pay for all medical treatments given to inmates. In fact, the U.S. Supreme Court held that, "as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between entity and the provider of the care." *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 245, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). We refuse to increase the scope of the Sheriff's financial responsibility to cover all types of medical treatments for inmates. Conversely, merely giving notice that the Sheriff is not financially responsible for an inmate's medical treatment in all situations will not relieve the Sheriff of his general duty of care. The determining factor in the case at hand is that the inmate's treatments dealt with a pre-existing medical condition. It would be unwise to subject the Sheriff to financial responsibility for all possible medical conditions that were pre-existing conditions prior to detention.

■ Although the sheriff is generally responsible for the welfare of prisoners, Northeast was put on sufficient notice that the Sheriff was not paying for the medical treatments. On several occasions Northeast received the transportation request form which stated boldly across the top of the paper: "own expense." The form contained Northeast's doctor's notes and recommendations on its face, showing that Northeast did have actual possession of the form. Therefore, we find that Northeast was put on actual notice

that Lancaster was paying for his own medical expenses. Northeast is therefore allowed to recover from Lancaster or seek reimbursement from the Indiana Department of Public Welfare under the Hospital Care for the Indigent Act (HCI), but not from the Sheriff.

 Northeast made a choice to attempt to recover from the Sheriff rather than from HCI, for this reason we will briefly address how HCI applies to this case. HCI applies where the hospital is placed on actual or inquiry notice that a prisoner may be indigent. *St. Mary's Medical Center*, 671 N.E.2d 929. "[A] hospital is not relieved of its responsibility to seek HCI benefits merely because a sheriff has a duty to pay for a prisoner's medical care." *Id.*, at 933.

 The process for applying for HCI benefits are set forth in Ind.Code 12–16–4–1, et seq., and include the following:

A hospital must file the application (for HCI benefits) with a county office not more than thirty (30) days after the patient has been admitted to the hospital . . .

Ind.Code 12–16–4–2. If Northeast did not fulfil the statutory requirements for filing, then Northeast's only recourse is to hold Lancaster personally liable for the medical treatment. "We decline to hold as a matter of law that a hospital "has reason to believe" that every prisoner "may be indigent"and is required to apply for HCI benefits." *St. Mary's Medical Center*, 671 N.E.2d at 932. We are not requiring Northeast to assume that every inmate brought in for treatment is indigent. But when the jail gives notice that the inmate will be paying at his own expense, the hospital is responsible for inquiry into the financial background of the inmate just as they would for any other patient.

 Although, the record is silent on the financial situation of Lancaster, it is possible that he was eligible for HCI benefits. The Ind.Code 12–16–3–1 provides in relevant part:

(a) An Indiana resident who meets the income and resource standards established by the division under section 3 of this chapter is eligible for assistance to pay for any part of the cost of care provided in a

hospital in Indiana that was necessitated after the onset of a medical condition that was manifested by symptoms of sufficient severity that the absence of immediate medical attention would probably result in any of the following:

(1) Placing the individual's life in jeopardy.

(2) Serious impairment to bodily functions.

(3) Serious dysfunction of a bodily organ or part.

It is clear that Lancaster's hemorrhoids would be classified as a serious impairment to a bodily function or dysfunction of a bodily organ.

 HCI does not apply to inmates and patients of institutions of the department of correction, the state department of health, the division of mental health, or the division of disability, aging, and rehabilitative services. Ind.Code 12–16–2–5. A prisoner's status as an inmate of a county jail does not preclude him from satisfying nonmedical qualifications under HCI, and he is not considered an inmate in the department of correction. *Lutheran Hosp. of Fort Wayne v. Dep't of Pub. Welfare*, 571 N.E.2d 542, 545 (Ind.1991). Therefore, Northeast can not contend that Lancaster is excluded from HCI benefits because of his status as an inmate of a county jail. If Lancaster meets the financial qualifications of the statute, Northeast was required to file for reimbursement under HCI.

 The purpose underlying the legislature's enactment of the HCI program is to make cost-free emergency medical care readily available to indigent persons who suffer serious physical injury, disease, or defect. *Gary Community Mental Health Center v. Ind. Dep't of Pub. Welfare*, 507 N.E.2d 1019, 1023 (Ind.Ct.App.1987), *reh'g denied*. The purpose of this statute was not intended to relieve the county sheriff of his legal duty to pay for medical care. *St. Mary's Medical Center*, 671 N.E.2d 929. We do not feel that the Sheriff in this particular case is hiding behind or circumventing the intent of the statute in any way. The Sheriff was relieved of his financial responsibility when he notified Northeast that Lancaster would pay his own expense. Northeast was incorrect in

their assumption that the Sheriff would pay for the medical treatment and should have inquired into the financial status of Lancaster in order to pursue recovery from HCI, instead of from the Sheriff.

## CONCLUSION

The trial court did not err in finding that the Sheriff has no duty to pay for medical expenses arising out of treatment for a pre-existing medical condition when sufficient notice is given to the care provider.

Affirmed.

HOFFMAN, J., concurs.

DARDEN, J., concurs in result with separate opinion.

DARDEN, Judge, concurring in result.

I concur only in the result. While I am disturbed by the majority's interpretation limiting a sheriff's statutory duty to provide medical care to an inmate, I do not believe that the facts in the case before us, combined with the paucity of argument and authority propounded by appellant Northeast, *See* Ind. Appellate Rule 8.3(A)(7), combine to sustain appellant's burden of convincing us the trial court erred. Northeast appeals a negative judgment.[1] In review of a negative judgment, the "appellate tribunal must be convinced that the evidence as a whole was such that it leads unerringly and unmistakably to a decision opposite that reached by the trial court." *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind.1995). Essentially, the inquiry is "whether there is *no* way the court could have reached its decision." *Id.* at 1120 (emphasis in original). I do not find that the record before us leads to such a result, based upon Northeast's arguments. Accordingly, I do not believe that this case warrants the holding which the majority has reached and which now becomes a matter of law. I would affirm on the grounds that Northeast has failed to convince us that the evidence leads unerringly and unmistakably to a decision that the Sheriff must pay for this treatment.

---

1. A negative judgment is one entered against a party who bears the burden of proof. *Vander-* *burgh County v. Rittenhouse*, 575 N.E.2d 663, 666 (Ind.Ct.App.1991).