**AMERICAN LEGION POST # 113,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 06A01–9501–CR–24.

Court of Appeals of Indiana.

Oct. 31, 1995.

Transfer Denied Jan. 9, 1996.

Deborah K. Smith Martin & Smith, Thorntown, for Appellant.

Pamela Carter, Attorney General, Geoff P. Davis, Deputy Attorney General, Indianapolis, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

American Legion Post # 113 ("American Legion") appeals from its convictions for Unlawful Gambling, a Class B misdemeanor, Promoting Professional Gambling, a Class D felony, and Professional Gambling, a Class D felony, following a jury trial. American Legion possessed, used, and promoted the operation of four gambling devices for profit. After repeated warnings about the illegality of these actions, the Indiana State Police raided the post on October 6, 1993. American Legion does not dispute the factual basis for the convictions but challenges the constitutionality of the three Indiana statutes that prohibit the gambling activities for which it was convicted.

Affirmed.

### ISSUES

American Legion presents two issues for our review which we restate as follows:

1. Whether Indiana Code §§ 35–45–5–2, 35–45–5–3, and 35–45–5–4 violate the Indiana and United States Constitutions.

2. Whether the State's regulation of gambling constitutes an unreasonable exercise of police power.

## DISCUSSION AND DECISION

### Indiana's Gambling History

Historically, the State of Indiana has prohibited gambling. *See, e.g., State v. Nixon* (1979), 270 Ind. 192, 384 N.E.2d 152 (parimutuel wagering on horse races held unconstitutional). In 1988, following voter approval, the Indiana Constitution was amended deleting the general prohibition against lotteries and authorizing lotteries conducted by the State Lottery Commission. *Indiana Gaming Comm'n v. Moseley* (1994), Ind., 643 N.E.2d 296, 297; *see* IND.CODE § 4–30. At its next session, the legislature proceeded to authorize horse race gambling. *Id.; see* IND.CODE § 4–31. Then, in 1993, a special session of the General Assembly approved riverboat casinos as a lawful gambling activity. *Id.; see* IND.CODE § 4–33 (creating the Indiana Gaming Commission authorized to issue up to eleven riverboat casino licenses). Aside from these amendments, gambling continues to be strictly prohibited by Indiana's anti-gambling laws.

### Issue One: Privileges or Immunities and Equal Protection

American Legion contends that Indiana's anti-gambling statutes violate Article I, Section 23 of the Indiana Constitution and the equal protection clause of the Fourteenth Amendment to the United States Constitution. Therefore, American Legion argues its convictions pursuant to those statutes must be vacated. We disagree.

### A. Indiana Constitution

Article I, Section 23 of the Indiana Constitution provides:

> The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

Our supreme court has recently held that Section 23 should be applied and interpreted independent of the equal protection clause of the Fourteenth Amendment. *Collins v. Day* (1994), Ind., 644 N.E.2d 72, 75.[1] Unlike Fourteenth Amendment analysis, the protections assured by Section 23 apply equally to prohibit all improper grants of unequal privi-

leges, and we do not apply varying degrees of scrutiny for claims involving suspect classes or fundamental rights. *Id.* at 80. The *Collins* court determined that where a statute grants unequal privileges or immunities to different classes of persons, proper constitutional inquiry under Section 23 requires consideration of two factors. *Id.* at 78. The first factor focuses upon the nature of the classification. *Id.* The classification must be based upon distinctive, inherent characteristics which rationally distinguish the unequally treated class, and the disparate treatment accorded by the legislation must be reasonably related to such distinguishing characteristics. *Id.* at 79. The second factor recognizes the need for uniformity and equal availability of the preferential treatment for all persons similarly situated. *Id.* It requires that any privileged classification be open to any and all persons who share the inherent characteristics which distinguish and justify the classification, with the special treatment accorded to any particular classification extended equally to all such persons. *Id.*

The court in *Collins* emphasized that in applying the two-part standard, we must give considerable deference to the legislature's balancing of the competing interests involved. *Id.* at 80. We presume the statute in question to be constitutional, and the burden is on the party challenging the constitutionality of the statute to negate every conceivable basis which might have supported the classification. *Id.* Moreover, "the question of classification under Section 23 is primarily a legislative question" only subject to judicial review "where the lines drawn appear arbitrary or manifestly unreasonable." *Id.* (citing *Chaffin v. Nicosia* (1974), 261 Ind. 698, 701, 310 N.E.2d 867, 869).

■ The challenged statutes, Indiana Code §§ 35–45–5–2, 35–45–5–3, and 35–45–5–4 are general prohibitions against gambling in Indiana. The statutes do not distinguish between persons or classes of persons to whom those laws and penalties apply. However, American Legion contends that the riv-

---

1. Although Section 23 is commonly referred to as the equal protection clause of the Indiana Constitution, the court in *Collins* emphasized

that Section 23 is a privileges and immunities clause and was not enacted to assure citizens equal protection of the laws. *Id.* at 77.

erboat, pari-mutuel, and lottery exceptions to the general prohibition against gambling create unlawful classifications of persons to which the anti-gambling statutes do not apply.

First, the riverboat and the pari-mutuel wagering exceptions apply to those particular "forms" of gambling which the legislature has decided to permit. Those exceptions do not create unlawful classifications of individuals who may participate in those forms of gambling but rather allow all individuals to lawfully engage in those activities. Essential to American Legion's Section 23 claim is the assertion that the legislature has granted unequal privileges to differing classes of persons. American Legion has failed to demonstrate that those statutory exceptions grant unequal privileges or immunities to different classes of persons. Additionally, American Legion has not shown it was excluded from participation in, or operation of, these excepted activities. Hence, application of the *Collins* analysis is inappropriate.

■ The State concedes, and we agree, that because the operation of lotteries is limited to the State Lottery Commission, the Commission enjoys a privilege as well as an immunity from prosecution not granted to other individuals or organizations. IND. CODE § 4–30–18–1 (article does not authorize any lottery except lottery operated by Commission); IND.CODE § 4–30–18–4 (exempts from application of anti-gambling laws sale of lottery tickets authorized by Commission). In applying the *Collins* two-part test, we first address whether the authorization and exemption from prosecution afforded to the State Lottery Commission, which is not afforded to all other citizens and organizations, is a classification based upon distinctive, inherent characteristics. If so, we then consider whether the unequal treatment is reasonably related to such distinguishing characteristics.

We conclude that there are inherent distinctions between the State Lottery Commission and every other organization and citizen that are reasonably related to the classification limiting the operation of lotteries to those authorized by the Commission. The legislature's intention to ensure the integrity of lottery activities by maintaining control over and regulating those activities is clear.

This court has stated that the purpose of Indiana's statutory scheme authorizing a state operated lottery is to allow Indiana to regulate and maintain control over all lotteries conducted in this state. *L.E. Services v. State Lottery Comm'n* (1995), Ind.App., 646 N.E.2d 334, 340, *trans. denied.* As Indiana, through the State Lottery Commission, is uniquely situated to regulate and control gambling activities, the statutory authorization of state-run lotteries is reasonably related to the Commission's distinguishing characteristics. We cannot say that the distinction created by the legislature which limits the operation of lotteries is arbitrary or manifestly unreasonable. Furthermore, considering the second factor in *Collins*, which requires that the privilege be afforded to all persons who share the inherent characteristics which justify the classification, we conclude that because the State Lottery Commission uniquely possesses the characteristics which justify its authorization and exemption, the second factor is satisfied.

Applying the required deferential standard of review, we must presume that the statutory authorization of lotteries conducted by the State Lottery Commission, and the Commission's exemption from Indiana's anti-gambling laws, are constitutional and we defer to the legislature's balancing of the competing interests involved. *See Collins,* 644 N.E.2d at 80. In addition, American Legion has failed to negate every conceivable basis which might support the classification. American Legion has not shown that its state constitutional rights have been violated.

### B. Fourteenth Amendment

■ Next, we consider whether the statutory exceptions to Indiana's anti-gambling laws violate American Legion's equal protection rights under the Fourteenth Amendment. "When determining whether state legislation violates the Fourteenth Amendment's equal protection guarantee, the level of scrutiny applied depends upon the classification made in the challenged legislation." *Pazzaglia v. Review Bd.* (1993), Ind.App., 608 N.E.2d 1375, 1377, *trans. denied.* If the classification does not involve either a suspect class or a fundamental right we apply a rational basis analysis. *Id.* The legislation

will pass constitutional muster if the classification has a rational relation to a legitimate government purpose. *Id.*

Here, the challenged statutes involve neither a suspect class nor a fundamental right and, thus, we must determine whether the legislation bears a rational relation to a legitimate government purpose. We reiterate that the riverboat and pari-mutuel wagering exceptions to Indiana's anti-gambling laws create no classifications at all between individuals but, rather, merely apply to particular "forms" of gambling which the legislature has decided to permit. Therefore, we are again concerned only with the classification of the State Lottery Commission.

We conclude that the lottery exception is rationally related to a legitimate government purpose. This court has recognized that the State has a legitimate interest in maintaining tight regulatory control over gambling, an industry illegal in many states and highly restricted in Indiana. *Dept. of Revenue v. There To Care, Inc.* (1994), Ind.App., 638 N.E.2d 871, 874, *trans. denied.* The State's interest in maintaining control and regulating gambling in the form of lotteries can best be attained by limiting the operation of lotteries to a state agency. Further, the state lottery serves an important revenue-generating function which in turn benefits the public welfare. Indiana Code § 4–30–1–1 specifically provides that:

> The purpose of this article is to establish lottery games in Indiana that are the best available and that enable the people of Indiana to benefit from significant additional money for capital improvements.

Through its unique ability to maintain and regulate the state-run lottery, Indiana may further "ensure the equitable participation of racial minorities in all phases of the lottery" and also ensure that gambling advertising and promotion "shall be consistent with the dignity and integrity of the state." IND. CODE § 4–30–1–2(5), (6). The challenged legislation passes rational basis scrutiny. American Legion was not denied equal protection of the law under the Fourteenth Amendment.

### Issue Two: Public Health and Safety

█ American Legion maintains that the State's regulation of gambling under Indiana Code § 35–45–5 constitutes an unreasonable exercise of police power. We disagree.

Indiana has long recognized that valid laws may be enacted under the police power to protect the public health, public morals, public order, public safety, or public welfare. *Kleiman v. State* (1992), Ind.App., 590 N.E.2d 660, 663. Similar to many other states, Indiana has chosen to permit and to strictly regulate gambling through an exercise of the police power. We cannot agree with American Legion's assertion that strict regulation of gambling is unrelated to public health and safety. The Supreme Court has recognized that gambling involves the public welfare and that states have a substantial government interest in the health, safety and welfare of their citizens in relation to gambling activities. *See Posadas De Puerto Rico Ass'n v. Tourism Co.* (1986), 478 U.S. 328, 341, 106 S.Ct. 2968, 2977, 92 L.Ed.2d 266, 281. Indeed, this court has stated that Indiana has a legitimate interest in regulating gambling through its exercise of the police power. *There To Care, Inc.*, 638 N.E.2d at 874.

Still, American Legion asserts that the State merely seeks economic profit under the guise of public health and safety and is preventing other citizens and organizations from reaping the same economic rewards. However, we see a significant difference between state-regulated gambling activities and private for-profit gambling. Unlike private for-profit gambling, all Indiana citizens may reap a potential benefit from the revenue generating function served by state operated and regulated activities. Additionally, the State is able to protect its citizens from unlawful gambling through its close regulation. The State's interests far outweigh the entertainment and profit interests asserted by American Legion. Strict regulation of gambling through Indiana's anti-gambling statutes constitutes a valid exercise of the State's police power.

Judgment affirmed.

ROBERTSON and RILEY, JJ., concur.