**Ty J. SCHRENGER, Appellant–Defendant,**

**v.**

**CAESARS INDIANA, Appellee–Plaintiff.**

No. 10A01–0408–CV–349.

Court of Appeals of Indiana.

April 19, 2005.

Transfer Denied July 26, 2005.

Bruce A. Brightwell, Louisville, KY, Attorney for Appellant.

Gregory L. Taylor, Lloyd & McDaniel, PLC, New Albany, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant–Defendant, Ty J. Schrenger, appeals from the trial court's grant of summary judgment in favor of Appellee–Plaintiff, Caesars Indiana ("Caesars"),[1] in Caesars' action seeking to recover $25,000 in credit it had extended to Schrenger. Upon appeal, Schrenger presents two issues, which we restate as: (1) whether Indiana Code § 34–16–1–1 prevents Caesars from collecting on the debt, and (2) whether Caesars was unjustly enriched by the trial court's judgment. Caesars presents one issue upon cross-appeal: whether the trial court erred in not awarding it treble damages.

We affirm.

The record reveals that on August 10, 2000, Schrenger entered into a written agreement with Caesars wherein Caesars agreed to extend credit to Schrenger for the purchase of gambling markers at Caesars' riverboat casino. Pursuant to this credit agreement, Caesars extended credit to Schrenger on ten occasions through 2002. On one of these occasions, in February of 2002, Caesars extended $25,000 in credit to Schrenger.[2] Between February 6 and 17, 2002, Schrenger then wrote ten checks, each in the amount of $2,500, to repay Caesars, but the checks were returned when presented for payment, noting that there were not sufficient funds to cover the checks.

On September 29, 2003, Caesars filed a complaint against Schrenger, seeking recovery of the $25,000. Schrenger filed his answer on October 14, 2003. On February 13, 2004, Caesars moved for leave to file an amended complaint, which the trial court granted on February 18, 2004. In its amended complaint, Caesars sought to recover the $25,000 owed by Schrenger as actual damages in addition to treble damages pursuant to Indiana Code § 34–24–3–1 (Burns Code Ed. Repl.1998), claiming that Schrenger had engaged in the crime of check deception. Schrenger answered the amended complaint on February 25, 2004.

On April 13, 2004, Caesars moved for summary judgment, and on May 19, 2004, Schrenger filed his response.[3] On June 28, 2004, a hearing was held on the motion for summary judgment.[4] On July 20, 2004, the trial court granted summary judgment in favor of Caesars, awarding $25,000 in damages, with pre-judgment and post-judgment interest, costs, together with attorney fees in the amount of $8,250.

---

1. The record reveals that Caesars is a limited liability company.

2. Apparently Schrenger paid Caesars for the credit extended on the other nine occasions totaling $64,000.

3. The trial court had earlier granted Schrenger's motion for an extension of time to respond to the motion for summary judgment.

4. A transcript of the summary judgment hearing was not included in the materials provided to us upon appeal.

On August 11, 2004, Schrenger filed a notice of appeal.[5]

Upon appeal, Schrenger claims that the trial court erred in granting summary judgment in favor of Caesars. He does not deny that he was granted credit in the amount of $25,000 by Caesars, nor does he deny that he has failed to repay this amount. Instead, Schrenger claims that an Indiana statute prevents Caesars' action to collect on the debt and that if Caesars were allowed to collect, it would be unjustly enriched. We address each contention in turn.

### Statutory Interpretation

■ The parties disagree over how we should construe two statutes, Indiana Code § 34–16–1–1 (Burns Code Ed. Repl.1998) and Indiana Code § 4–33–9–15 (Burns Code Ed. Supp.2004). For purposes of clarity and brevity, we will refer to the first statute as "Section 1" and the latter as "Section 15." Section 1 effectively forbids the enforcement of gambling debts, but Section 15 specifically authorizes riverboat casino operators to extend credit to patrons for the purpose of wagering.

Issues of statutory interpretation are pure questions of law and reviewed de novo. *Bobrow v. Bobrow*, 810 N.E.2d 726, 732 (Ind.Ct.App.2004). When interpreting statutes, our foremost objective is to determine and effect legislative intent. *MDM Invs. v. City of Carmel*, 740 N.E.2d 929, 934 (Ind.Ct.App.2000). Statutes must be construed to give effect to legislative intent, and we must give deference to such intent whenever possible. *Id.* We consider the goals of the statute and the reasons and policy underlying its enactment. *Id.* We examine and interpret a statute as a whole, giving words their common and ordinary meaning, and do not overemphasize a strict, literal, or selective reading of individual words. *Id.* We take words and phrases in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. *Id.* Every word must be given effect and meaning where possible, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Id.* We ascertain the meaning and intention of the legislature not only from the phraseology of the statute but also by considering its nature, design, and the consequences which flow from the reasonable alternative interpretations of the statute. *Id.* It is a basic principle of statutory construction that when two statutes deal with the same subject matter in different terms, the latest expression of legislative intent controls. *Vickery v. City of Carmel*, 424 N.E.2d 147, 149 (Ind.Ct. App.1981). Moreover, where two statutes cannot be harmonized, and the legislature

---

**5.** In his appendix, Schrenger has included only the trial court's chronological case summary and the trial court's order granting summary judgment. Indiana Appellate Rule 50(A)(2) lists the materials that must be included in the appellant's appendix, if such materials exist. Included in this list are the chronological case summary, the judgment or order being appealed, relevant portions of the transcript, and pleadings and other documents from the clerk's record that are necessary for resolution of the issues raised upon appeal. Appellate Rule 50(B)(3) states that the appellee's appendix shall be governed by Rule 50(A)(2), except that it shall not contain materials already included in the appellant's appendix. Caesars' appendix does contain the complaint, amended complaint, and the supporting documents attached thereto. However, neither appendix contains the motions and responses regarding summary judgment, the materials designated in support or opposition thereto, or even a list of the materials that were designated to the trial court. Such materials are usually indispensable upon appeal from an order granting summary judgment. However, here, neither party appears to dispute the facts which we rely upon in order to resolve this case. Nevertheless, counsel for both parties would be well advised to heed the requirements of our Appellate Rules.

dealt with a subject in a detailed manner in one statute and in a general manner in the other, the detailed statute will supersede the general one. *W. Clark Cmty. Schs. v. H.L.K.*, 690 N.E.2d 238, 241 (Ind. 1997).

Section 1 provides as follows:

"A note, bill, bond, conveyance, contract, mortgage, or other security made in consideration of:

(1) money or other property won as the result of a wager; or

(2) the repayment of money lent at the time of a wager for the purpose of being wagered;

is void."

Section 1, and its predecessors, have been the law in our state for well over a century. *See Plank v. Jackson*, 128 Ind. 424, 26 N.E. 568 (1891) (citing 4950 R.S. 1881).[6]

Schrenger argues that Section 1 prohibits Caesars' action to collect the $25,000 it loaned to him. Caesars does not deny that Section 1 on its face would appear to bar its action. Instead, Caesars contends that its action is specifically allowed by Section 15, which provides:

"(a) All tokens, chips, or electronic cards that are used to make wagers must be purchased from the owner or operating agent of the riverboat:

(1) while on board the riverboat; or

(2) at an on-shore facility that:

(A) has been approved by the commission; and

(B) is located where the riverboat docks.

(b) *The tokens, chips, or electronic cards may be purchased by means of an agreement under which the owner or operating agent extends credit to the patron.*" (emphasis supplied).

Caesars contends that Section 15, as both the more detailed statute and the latest expression of legislative intent, controls and permits its action. Schrenger argues that the two statutes can be construed harmoniously. Specifically, Schrenger argues that Section 15 should be read to allow riverboat casinos to extend credit to patrons and to collect payment out of that patron's winnings, if any, but that Section 1 prevents a casino which does extend credit from affirmatively bringing an action to seek repayment on the debt. While we find Schrenger's interpretation to be creative, we are unable to agree with it.

■ As a matter of perspective, "[h]istorically, the State of Indiana has prohibited gambling." *Am. Legion Post No. 113 v. State*, 656 N.E.2d 1190, 1192 (Ind.Ct. App.1995) (citing *State v. Nixon*, 270 Ind. 192, 384 N.E.2d 152 (1979) (holding that pari-mutuel wagering on horse races was unconstitutional)), *trans. denied; see also Kain v. Bare*, 4 Ind.App. 440, 31 N.E. 205, 207 (1892) (referring to a gambling contract as being void as against public policy). However, in 1988, the Indiana Constitution was amended to delete the general prohibition against lotteries and to authorize lotteries conducted by the State Lottery Commission. *Am. Legion*, 656 N.E.2d at 1192; *see also Ind. Gaming Comm'n v. Moseley*, 643 N.E.2d 296, 297 (Ind.1994); Ind.Code 4–30 (Burns Code Ed. Repl.1996 & Supp.2004) (Indiana State Lottery). The General Assembly then

---

**6.** Indeed, as explained in 71 Am.Jur. Proof of Facts 3d *Enforcement of Casino Gambling Debts* § 2 (2003), our Section 1 derives from Section 1 of the Statute of Queen Anne, enacted in 1710 in Great Britain, which in effect prohibited enforcement of gambling debts. Several other states have similar statutes, and at least three others prohibit the enforcement of gambling debts by common law. *See Enforcement of Casino Gambling Debts, supra*, at § 3–5.

proceeded to authorize horse race gambling and, in 1993, approved riverboat casinos as a lawful gambling activity. *Am. Legion,* 656 N.E.2d at 1192; *Moseley,* 643 N.E.2d at 297; *see also* Ind.Code 4–31 (Burns Code Ed. Repl.1996 & Supp.2004) (pari-mutuel wagering on horse races); Ind.Code 4–32 through 4–33 (Burns Code Ed. Repl.1996 & Supp.2004) (regulating games of chance and riverboat casinos). However, aside from these exceptions, gambling continues to be strictly prohibited by Indiana's anti-gambling laws. *Am. Legion,* 656 N.E.2d at 1192. Thus, in our state, while gambling is generally prohibited, certain well-regulated exceptions have been created. It is against this background that we must interpret the statutes at issue before us.

Section 1 acts to void any note, bill, bond, conveyance, contract, mortgage, or other security made in consideration of either money or other property won as the result of a wager or in consideration of the repayment of money lent at the time of a wager for the purpose of being wagered. This is the plain meaning of the text of the statute. But when this statute was enacted, all forms of gambling were unlawful and considered as being against public policy. However, the current state of the law has carved out several exceptions to our anti-gambling policy, including Section 1. We read Section 15 to be a specific, later-enacted exception to the general rule that gambling debts are void as against public policy. To read Section 15 as suggested by Schrenger would allow riverboat casinos to extend credit to patrons for the specific purpose of gambling, but deny the casinos the ability to collect on such debt except out of the winnings, if any, of that patron. We do not presume that the legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result. *Ind. Mun. Power Agency v. Town of Edinburgh,* 769 N.E.2d 222, 226 (Ind.Ct.App.2002). Schrenger would have us hold that the General Assembly intended to allow riverboat casinos to be able to extend credit, but effectively never be able to collect on such debts. In other words, a casino *could* loan money, but a casino would be well advised not to do so because it would not be able to collect on the debt unless the debtor happened to win more than he borrowed.[7] We reject Schrenger's proposed reading of the statutes.

We recognize that in several states which have legalized some forms of gambling, the statutes which prohibit collection of gambling debts have been amended to specifically exclude debts incurred while engaged in legal gambling. *See* Fla. Stat. Ann. § 849.26 (2005); 720 Ill. Comp. Stat. Ann. 5/28–7 (1991); Minn.Stat. Ann. § 541.21 (2000); Miss.Code Ann. § 75–76–175 (1990); Ohio Rev.Code Ann. § 3763.01 (2002); S.D. Codified Laws § 42–7B–55 (1990); Va.Code Ann. § 11–14 (1998); Wash. Rev.Code Ann. § 4.24.090 (2005); Wis. Stat. Ann. § 895.055 (2004). While we acknowledge that Section 15 does not explicitly refer to Section 1, our holding is that it effectively creates an exception for riverboat casino debts incurred legally pursuant to Section 15. Given our interpretation of these statutes, we cannot conclude that, for the reasons argued by Schrenger, the trial court erred in granting summary judgment.

*Unjust Enrichment*

■ In addition to his statutory argument, Schrenger also contends that to allow Caesars to collect on the debt would unjustly enrich Caesars because the

---

7. It is thought that more gamblers lose than win. This may be because the odds favor the house. Casinos and other gambling enterprises do not go into business to lose money.

$25,000 he borrowed was lost at Caesars' casino. Therefore, his argument continues, Caesars has already "collected" the money he owed to it. Again, although we find this argument to be imaginative, we are ultimately unpersuaded.

Key to Schrenger's argument is his view that he "lost" his money to the casino. While this may be true in a colloquial sense, we believe it is more accurate to say that Schrenger "spent" his money at the casino. When a patron wagers at a casino, he is not simply "giving" money to the casino, but instead he is spending his money—purchasing a chance to win even more. We therefore reject the basis of Schrenger's unjust enrichment argument. In summary, Schrenger has not convinced us that the trial court erred in granting summary judgment.

*Cross–Appeal—Treble Damages Claim*

In its cross-appeal, Caesars claims that the trial court erred when it did not award it treble damages pursuant to I.C. § 34–24–3–1, which provides that "[i]f a person suffers a pecuniary loss as a result of a violation of IC 35–43 ... the person may bring a civil action against the person who caused the loss for the following ... [a]n amount not to exceed three (3) times the actual damages of the person suffering the loss." Caesars argues that its claim against Schrenger was based upon his violation of Indiana Code § 35–43–5–5 (Burns Code Ed. Repl.2004), which defines the crime of check deception. Because the trial court found in its favor, Caesars claims that it is entitled to an award of treble damages. However, this court has previously held that the decision to award damages in excess of actual damages pursuant to I.C. § 34–24–3–1 rests within the discretion of the trial court and that there

is no absolute entitlement to an award of treble damages. *See Ballard v. Harman,* 737 N.E.2d 411, 418 n. 5 (Ind.Ct.App.2000); *Burgett v. Haynes,* 572 N.E.2d 1296, 1298 (Ind.Ct.App.1991), *see also White v. Ind. Realty Assocs. II,* 555 N.E.2d 454, 456 n. 1 (Ind.1990) (noting that because the General Assembly amended the statute to read "not to exceed" where it previously read "equal to," the statute seemed to grant discretion to trial courts in determining damages).[8] Thus, Caesars is incorrect in arguing that it was entitled to treble damages.

The judgment of the trial court is affirmed.

BAILEY, J., and MATHIAS, J., concur.

---

8. At the time these cases were decided, the treble damages statute was codified at Ind. Code § 34–4–30–1.