**MARSHALL & ILSLEY TRUST COMPANY, N.A., Trustee, Robert G. Woodward, Jr., Life Insurance Trust No. 1, Appellant–Defendant,**

v.

**Robert G. WOODWARD, Sr., Appellee–Plaintiff.**

No. 82A01–0508–CV–384.

Court of Appeals of Indiana.

June 16, 2006.

Brian P. Williams, Kahn Dees Donovan & Kahn, LLP, Evansville, IN, Attorney for Appellant.

Marco L. DeLucio, Allyson R. Breeden, Ziemer Stayman Weitzel & Shoulders, LLP, Evansville, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Marshall & Ilsley Trust Company ("Trustee") appeals from summary judgment for Robert G. Woodward, Sr. ("Woodward"), granting him an accounting of the Robert G. Woodward, Jr. Life In-

surance Trust No. 1 ("Trust"). Concluding a named remote contingent beneficiary is entitled to an accounting under Indiana statute, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY[2]

In May 2000, Robert G. Woodward, Jr. ("Grantor") established the Trust, which is an irrevocable trust funded by life insurance policies. Grantor died. At the time of his death, Grantor had a wife, Gayla, and three minor sons, Hank, Gregory and Elijah.

Under the terms of the Trust, Gayla was to receive distributions of income and principal at the Trustee's discretion for her health, maintenance, support and education. When she remarried, all of her interest in the trust was terminated; she "cease[d] to be a beneficiary of" the Trust, and the Trust was then held only for the benefit of the children. (Appellant's App. at 71.)

After Gayla's death, and prior to the oldest son reaching eighteen, the sons are entitled to discretionary distributions for their health, maintenance, support and education. Section 5(e) provides the Trust was to be divided into shares for each of Grantor's sons, such that distributions of principal could occur at the times provided in the Trust.[3] The Trust names contingent beneficiaries in the event all of Grantor's sons die without leaving living issue before the Trust is distributed: Woodward if he survives, but if he does not, the St. Benedict Catholic Church in Evansville.[4]

After the original trustee resigned, Woodward became the successor trustee as provided for in the trust document. Woodward resigned on December 4, 2002, and Marshall & Ilsley was named trustee. In March 2004, Woodward sought an accounting from Trustee because he was concerned about the administration of the Trust. Trustee refused his request.

In November 2004, Woodward filed an amended complaint against Trustee, requesting he be allowed "to inspect the trust property, Trustee's accounts, and any other documents concerning the administration of the Trust" and receive an accounting from Trustee. (*Id.* at 66.) The

---

1. Trustee also raised a second issue, asserting one of the trial court's factual findings was not supported by evidence. However, specific findings of fact and conclusions thereon are neither required nor prohibited in the summary judgment context. *City of Gary v. Ind. Bell Tel. Co., Inc.*, 732 N.E.2d 149, 153 (Ind. 2000). Such findings aid our review of a summary judgment, but they are not binding on this Court. *Id.* Accordingly, we decline to address this issue.

2. We heard oral argument on April 6, 2006, at the University of Southern Indiana in Evansville. We thank the University for its hospitality and commend counsel for the quality of their advocacy.

3. Each son will receive one-fourth of his share when he graduates from college, one-third of the remainder at age thirty, one-half of the remainder at age thirty-five and the remaining balance at age forty. If a son does not graduate from college, he will receive his first distribution at age thirty.

4. Section 5(j) of the Trust document provides:

*Contingent Beneficiaries.* In the event that a child of Grantor dies before or during the term of this trust without leaving living children surviving him or her, and without there being any children or grandchildren of Grantor living at such time, then subsequent to the death of Grantor and [Gayla], the residue of the Trust estate shall be paid and distributed absolutely and free from trust to Grantor's father, Robert G. Woodward, Sr., if he shall be living. In the event Grantor's father, Robert G. Woodward, Sr., is not living at such time, then the residue of the Trust Estate shall be paid and distributed absolutely and free from trust to the St. Benedict Catholic Church (parish catholic diocese) in Evansville, Indiana.

(Appellant's App. at 74.)

trial court granted summary judgment in favor of Woodward on June 29, 2005, concluding Woodward is a remainder beneficiary as defined by Ind.Code § 30–2–14–11 and thus entitled to an accounting under Ind.Code § 30–4–3–6.[5]

## DISCUSSION AND DECISION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When reviewing summary judgment, we apply the same standard as does the trial court. *Wilson v. Royal Motor Sales, Inc.*, 812 N.E.2d 133, 135 (Ind. Ct.App.2004), *reh'g denied.* We construe the pleadings, affidavits, and the designated evidence in the light most favorable to the non-moving party. *Id.* Neither the trial court nor this court may weigh evidence or determine credibility when reviewing a summary judgment motion. *Id.*

Although a summary judgment is clothed with a presumption of validity, we carefully scrutinize the trial court's decision to ensure the nonmovant was not improperly denied his or her day in court. *Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 613 (Ind.Ct.App.2000), *trans. denied* 753 N.E.2d 8 (Ind.2001). If summary judgment can be sustained on any theory or basis in the record, we must affirm. *Irwin Mortgage Corp. v. Marion County Treasurer*, 816 N.E.2d 439, 442 (Ind.Ct.App.2004).

Whether a named remote contingent beneficiary is entitled to an accounting under Indiana's applicable statutes is a question of first impression. After briefly setting out the relevant statutes, we examine the provisions of the Trust document that Trustee asserts restrict accountings to Grantor's sons. Finally, we examine the policy considerations behind the statutes to determine whether the statutory definition of "beneficiary" includes named remote contingent beneficiaries.

### Overview of Relevant Statutes

Title 30 of the Indiana Code deals with trusts and fiduciaries. Article 4 is the Trust Code[6] and Chapter 14 of Article 2 is the Uniform Principal and Income Act (UPIA).[7]

"A trust is a fiduciary relationship between a person who, as trustee, holds title to property and another person for whom, as beneficiary, the title is held." Ind.Code § 30–4–1–1(a). The Trust Code defines beneficiary and income beneficiary by reference to the UPIA.[8] *See* Ind.Code § 30–

---

**5.** The trial court included a protective order barring Woodward from disseminating the information in the accounting without prior order of the court.

**6.** Ind.Code § 30–4–1–7 provides "the report of the Trust Code Study Commission ... may be consulted by the courts to determine the reasons, purposes and policies of this article, and may be used as a guide to its construction and application." The Trust Code Study Commission concluded its work sometime prior to 1977.

**7.** The 1997 version of the UPIA was enacted in Indiana in 2002. Ind.Code § 30–2–14–44 addresses the application and construction of this Act, noting "consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."

**8.** The Trust Code defines the term remainderman, which is not used elsewhere in the statutes, but often appears in case law. The Trust Code Study Commission Comments to Ind.Code § 30–4–1–2 indicate the "definitions of income beneficiary and remainderman continue those found in IC 1971, 30–2–3–1." The Trust Code was amended in 2002 to reflect, in part, the adoption of the UPIA and by reference includes the definition of a remainder beneficiary. A remainderman is "a beneficiary entitled to principal, including income which has been accumulated and added to the principal." Ind.Code § 30–4–1–2(15). The trial court notes both definitions in its order.

4–1–2. Under the UPIA definition, a trust beneficiary includes "an income beneficiary, and a remainder beneficiary." Ind. Code § 30–2–14–2(2). An income beneficiary means "a person to whom net income of a trust is or may be payable."[9] Ind. Code § 30–2–14–5. A remainder beneficiary is defined as "a person entitled to receive principal when an income interest ends."[10] Ind.Code § 30–2–14–11. Income interest means "the right of an income beneficiary to receive all or part of net income" whether the distribution is mandatory or discretionary. Ind.Code § 30–2–14–6. "An income interest ends on the day before an income beneficiary dies or another terminating event occurs, or on the last day of a period during which there is no beneficiary to whom a trustee may distribute income." Ind.Code § 30–2–14–20.

The trustee has a duty to "administer a trust according to its terms." Ind.Code § 30–4–3–6(a). Ind.Code § 30–4–3–6(b) enumerates additional duties and provides, in part:

(b) Unless the terms of the trust provide otherwise, the trustee also has a duty to do the following:

\* \* \* \* \*

(7) Upon reasonable request, give the beneficiary complete and accurate information concerning any matter related to the administration of the trust and permit the beneficiary or the beneficiary's agent to inspect the trust property, the trustee's accounts, and any other documents concerning the administration of the trust.

The Trust Code "shall be interpreted and applied to the terms of the trust so as to implement the intent of the settlor and the purposes of the trust." Ind.Code § 30–4–1–3. If there is a conflict, "the terms of the trust shall control unless the rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize." *Id.* Because the statute provides the trust provisions control absent a clear statutory prohibition, we first consider Trustee's arguments under the Trust document.

### Accounting Under the Trust

■ Trustee argues only the Grantor's sons have a right to an accounting, as provided in Section 4 of the Trust. Trustee states Section 4(f) "specifically provides a right to an accounting to each 'Withdrawal Beneficiary' . . . define[d] . . . as the Grantor's children." (Appellant's Br. at 15.) Trustee asserts the principle of *expressio unius est exclusio alterius* applies: By expressly providing Grantor's sons with the right to an accounting, the Trust document implicitly excludes anyone else, including Woodward, from receiving an accounting. *See* Black's Law Dictionary 1635 (7th ed.1999) ("The expression of one thing is the exclusion of another."). Our examination of the Trust document leads us to conclude the provisions in Section 4 of the Trust do not limit Woodward's right to an accounting.

Section 4 granted the children the right to withdraw a specified portion of a contribution of cash or property made to the Trust during Grantor's lifetime. The trustee was required to notify each child within thirty days of any contribution so the child

---

**9.** The UPIA defines net income as "the total receipts allocated to income during an accounting period minus the disbursements made from income during the period, plus or minus transfers under this chapter to or from income during the period." Ind.Code § 30–2–14–8.

**10.** The UPIA defines principal as "property that is held in trust for distribution to a remainder beneficiary when the trust terminates or that will remain perpetually vested in the trustee." Ind.Code § 30–2–14–10.

could withdraw his portion if he so chose. Section 4(f), Right to Accounting, affirms the children have a "continuing right, during the calendar year, to require the Trustee to provide him or her with information concerning the nature and amount of the contributions made to the Trust Estate during the calendar year." (Appellant's App. at 70.) The withdrawal beneficiaries' rights to withdrawal, and thus to information concerning contributions to the Trust pursuant to Section 4(f), ended at Grantor's death.

The information to be provided under Section 4(f) was limited to contributions made during the year; it did not include income generated by the trust, distributions made under the trust,[11] or costs of administering the trust. The limited withdrawal accounting of Section 4 was apparently intended to provide a withdrawal beneficiary with sufficient information on which to base his decision whether to withdraw contributions to the Trust. It was not an accounting as contemplated by Ind. Code § 30-4-3-6(b)(7), i.e., "complete and accurate information concerning any matter related to the administration of the trust."

Additionally, under Trustee's argument that this withdrawal accounting is the only accounting permitted under the Trust, Trustee would no longer be required or permitted to provide an accounting, however limited, to anyone after Grantor's death.[12] This conclusion is at odds with other portions of the Trust document, which contemplate an accounting of some kind.[13] Accordingly, we conclude the Trust document does not prohibit statutory accountings to beneficiaries.

Trustee argues Woodward cannot be a beneficiary of the Trust because Section 5(b), Beneficiaries, lists only Gayla and the children. Woodward responds he is a beneficiary of the Trust because he is named in Section 5(j), Contingent Beneficiaries. We now consider which beneficiaries are entitled to an accounting under the statute.

*Right to Accounting Under the Statute*

■ Ind.Code § 30-4-3-6(b)(7) requires a trustee to provide income beneficiaries and remainder beneficiaries an accounting upon request. Trustee argues Woodward is neither an income beneficiary nor a remainder beneficiary and, thus, is not entitled to an accounting under the statute.

An income beneficiary is a person to whom net income of a trust is or may be payable. Ind.Code § 30-2-14-5. Section 5(g) of the Trust allows the net income of the trust to be distributed to the children, making them income beneficiaries. If a child dies before his share of the corpus of the trust is distributed, there is no provision for payment of the net income to anyone else. Because only the children may receive distributions from the net income, Woodward is not an income beneficiary.

■ A remainder beneficiary is a person entitled to receive principal either 1) on the day before an income beneficiary dies or another terminating event occurs; or 2) on the last day of a period during which there is no beneficiary to whom a

---

11. While Grantor was still alive, no distributions were permitted under the Trust instrument.

12. Section 5 of the Trust, which provides guidelines for the Trustee's administering the principal and income of the Trust Estate, contains no accounting procedure.

13. For example, Section 8(c) of the Trust provides Gayla, acting alone, may have the trustee removed for cause. The first listed "acceptable reasonable cause" is "the failure of the Trustee to provide accurate and regular accounting." (Appellant's App. at 76.)

trustee may distribute income. *See* Ind. Code § § 30–2–14–11, –20.

Under the first prong, Woodward is a remainder beneficiary if the trust terminates because of the death of his childless grandchildren before distribution.[14] Under the second prong, the children are the only beneficiaries to whom the trustee may distribute income. When there are no income beneficiaries (*i.e.*, when the last child dies), Woodward would be entitled to the trust principal if none of the children had issue.

Although his right to the trust principal is contingent on his childless grandchildren predeceasing him, Woodward is within the definition of a remainder beneficiary under the statute. However, because the statute does not clearly indicate whether "remainder beneficiary" includes both vested and contingent beneficiaries, we must interpret the statute.

When interpreting statutes, our foremost objective is to determine and effect legislative intent, and we must give deference to such intent whenever possible. *Schrenger v. Caesars Indiana*, 825 N.E.2d 879, 881 (Ind.Ct.App.2005). We consider the goals of the statute and the reasons and policy underlying its enactment. *Id.* We examine and interpret a statute as a whole, giving words their common and ordinary meaning, and do not overemphasize a strict, literal, or selective reading of individual words. *Id.* We take words and phrases in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. *Id.* Every word must be given effect and meaning where possible, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Id.* We ascertain the meaning and intent of the legislature not only from the phraseology of the statute but also by considering its nature, design, and the consequences that flow from the reasonable alternative interpretations of the statute. *Id.*

Trustee argues the legislature "chose to adopt a . . . narrow definition of beneficiary" because it enacted the UPIA's and not the Uniform Trust Code's (UTC) definition of beneficiary. (Appellant's Br. at 14.) The UTC defines beneficiary as a "person that has a present or future beneficial interest in a trust, vested or contingent." Uniform Trust Code § 103(3)(A) (2005). Trustee asserts: "By adopting the definition of 'beneficiary' that does not include 'vested or contingent,' Indiana limited the definition of 'beneficiaries.' Proper interpretation of the Indiana definition for 'beneficiary' cannot include a contingent beneficiary." (Appellant's Br. at 14.)

Woodward asserts the legislature did not intentionally limit the definition of beneficiaries:

> In fact, leaving off the qualifiers "vested or contingent" in the beneficiary definition actually broadens the scope. Because the code does not limit the definition of remainder beneficiary to one with a "vested or contingent" interest, it logically follows that any interest as long as it involves a person entitled to receive principal when an income interest ends is sufficient.

(Appellee's Br. at 9.)

The National Conference of Commissioners of Uniform State Laws (NCCUSL) completed its final draft of a Uniform Trust Code in 2005. As our General Assembly enacted the current definition of beneficiary in 2002, three years before the Uniform Trust Code was completed, it seems unlikely our legislature deliberately selected the "narrow" UPIA definition

---

**14.** Each child is also a remainder beneficiary because the trust terminates as to him when his final share distribution is made when he reaches age 40.

over the "broad" UTC definition. Nor is it clear that omitting "vested or contingent" narrows or broadens the scope of the definition of beneficiary, given that all beneficiaries must be either vested or contingent.[15]

*Policy Considerations: Cost, Privacy and Accountability*

█ Trustee would limit the right to an accounting to vested beneficiaries in order to preserve the trust assets for the beneficiary[16] and to protect the privacy of those establishing and benefiting from trusts.[17] Woodward argues beneficiaries, whether vested or contingent, should be given a right to an accounting because a beneficiary should be able to hold the trustee accountable in trust-related matters.

The trial court relied on *Cox v. Cox*, 357 N.W.2d 304 (Iowa 1984), for the proposition that contingent beneficiaries have a right to an accounting. In *Cox*, the plaintiff requested an accounting of the testamentary trust established by the residue of his great-grandfather's estate. The trial court held the plaintiff was a contingent beneficiary of the trust and was thus an interested party, entitled to an accounting.

The Iowa Supreme Court upheld the trial court's decision. It relied on Restatement (Second) of Trusts, § 172, which deals with the duty of the trustee to keep and render accounts to the beneficiary. The comment to that section states, in part:

> The beneficiary may by a proper proceeding compel the trustee to render to the proper court an account of the administration of the trust. . . .

> The trustee may be compelled to account not only by a beneficiary presently entitled to the payment of income or principal, but also by a beneficiary who will be or may be entitled to receive income or principal in the future. *This is true even though the interest of the beneficiary is contingent.*

Restatement (Second) of Trusts, § 172, comment c (quoted in *Cox*, 357 N.W.2d at 306) (emphasis supplied). The *Cox* court noted this rule is justified by several policy considerations:

> Accountability is the hallmark of a trust. Property cannot be the subject of a trust where its application for the purposes of the trust depends upon the uncontrolled discretion of the one to whom legal title has been entrusted. Unbridled discretionary powers are inconsistent with the existence of a trust relationship. "No

---

**15.** Beneficiaries and their attendant interests may be classified in various ways, *e.g.*, vested/contingent, present/future, income/remainder. The vested/contingent dichotomy refers to the present certainty of a future benefit. A vested interest is certain, that is, "not subject to the happening of a condition precedent," Black's Law Dictionary 816 (7th ed.1999), while a contingent interest is uncertain, that is, dependent on "the occurrence of a condition precedent." *Id.*

**16.** Trustee refers to "the needless waste of the assets of the Trust to comply with every possible remote contingent beneficiary's requests to an accounting, no matter how unlikely it is that such beneficiary would ever receive anything from such a trust." (Appellant's Br. at 13.)

Trustee also points out if Woodward is considered a beneficiary entitled to an accounting, then the St. Benedict Catholic Church would also be entitled to an accounting. St. Benedict's is a more remote and contingent beneficiary than Woodward, as Woodward would have to die before they could benefit.

**17.** Trustee argues estate planning tends to be a private and confidential affair, and contingent beneficiaries such as charitable organizations and family relatives "may have no business learning of the private financial affairs of a trust, absent the catastrophic death of the original intended beneficiaries." (Appellant's Br. at 14.)

trust is created if the transferor does not manifest an intention to impose enforceable duties upon the transferee." Because the trustee acts on his or her behalf, the beneficiary is "entitled to know what the trust property is and how the trustee has dealt with it." We assume defendants would not contest a vested beneficiary's right to an accounting. We find no good reason to hold a contingent beneficiary's right to an accounting must await a trustee's breach of trust. Even contingent remaindermen are entitled to guard against damage to their interest.

357 N.W.2d at 306 (internal citations omitted).

The American Law Institute (ALI) and the NCCUSL have addressed this issue more recently. The ALI has completed part of the draft of the Restatement (Third) of Trusts; the relevant sections are part of Tentative Draft No. 4. Section 82(2) provides: "A trustee also ordinarily has a duty promptly to respond to the request of any beneficiary for information concerning the trust and its administration, and to permit beneficiaries on a reasonable basis to inspect trust documents, records, and property holdings." Section 83 provides: "A trustee has a duty to maintain clear, complete, and accurate books and records regarding the trust property and the administration of the trust, and, at reasonable intervals on request, to provide beneficiaries with reports or accountings."

The general tenor of the comments to these sections by the Reporter indicates continuing debate over whether and to what extent trustees must provide information to beneficiaries. The traditional approach is based on principles of equity and accountability, while the more recent arguments focus on the increased cost, complexity and delay of trust administration that requires regular notification to individuals who are not present beneficiaries.

The NCCUSL finished the Uniform Trust Code in 2005. Section 105 of the 2005 Draft noted the terms of the trust prevail over the statutory provisions except in certain enumerated sections, which could not be overridden by the trust document. Although listed among the mandatory duties of the trustee, the duty to respond to beneficiary requests for reports and information related to the administration of the trust is bracketed. The commentary explains this reflects that a "majority of the enacting jurisdictions have modified these provisions but not in a consistent way," noting the provisions on reporting to beneficiaries have "generated more discussion in jurisdictions considering enactment of the UTC than have any other provisions of the Code." Comment (2004 Amendment).

The commentator quotes from Joseph Kartiganer & Raymond H. Young, *The UTC: Help for Beneficiaries and Their Attorneys*, Probate & Prop., Mar./April 2003, at 18, 20, regarding the policy debate:

> The beneficiaries' rights to information and reports are among the most important provisions in the UTC. They are also among the provisions that have attracted the most attention. The UTC provisions reflect a compromise position between opposing viewpoints.
>
> Objections raised to beneficiaries' rights to information include the wishes of some settlors who believe that knowledge of trust benefits would not be good for younger beneficiaries, encouraging them to take up a life of ease rather than work and be productive citizens. Sometimes trustees themselves desire secrecy and freedom from interference by beneficiaries.

The policy arguments on the other side are: that the essence of the trust relationship is accounting to the beneficiaries; that it is wise administration to account and inform beneficiaries, to avoid the greater danger of the beneficiary learning of the breach or possible breach long after the event; and that there are practical difficulties with secrecy (for example, the trustee must tell a child that he or she is not eligible for financial aid at college because the trust will pay ...).

*Id.*

Under the UTC, the trustee must keep qualified beneficiaries "reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." Uniform Trust Code § 813(a). The same section requires a trustee to "promptly respond to a beneficiary's request for information related to the administration of the trust" unless the request is "unreasonable under the circumstances." *Id.* Qualified beneficiaries are also entitled to receive notice of certain events such as the division or combination of trusts and notice of a trustee resignation.

The UTC comments to the definition of a qualified beneficiary, § 103(13), note the following:

> *Due to the difficulty of identifying beneficiaries whose interests are remote and contingent,* and because such beneficiaries are not likely to have much interest in the day-to-day affairs of the trust, the Uniform Trust Code uses the concept of "qualified beneficiary" (paragraph (13)) to limit the class of beneficiaries to whom certain notices must be given or consents received.

\* \* \* \* \*

The qualified beneficiaries consist of the beneficiaries currently eligible to receive a distribution from the trust together with those who might be termed first-line remaindermen. These are the beneficiaries who would become eligible to receive distributions were the event triggering the termination of a beneficiary's interest or the trust itself to occur on the date in question.

Uniform Trust Code (2005), § 103(13) Comment (emphasis supplied). The UTC's limitation of the class of beneficiaries to whom notice and reports must be given favors, to some extent, Trustee's position that Woodward ought not to be entitled to an accounting. However, as this comment points out, the limitation depends, in part, on the difficulty of identifying the remote contingent beneficiaries. When the trust document identifies the remote contingent beneficiaries by name, as opposed to class, the difficulty of identifying these individuals has been removed.

We agree with the trial court's conclusion Woodward is entitled to an accounting. Trustee's legitimate cost and privacy concerns,[18] however, persuade us to limit the right of an accounting to those remote contingent beneficiaries who are *named* in the trust document. Woodward is named as a contingent beneficiary in the Trust document and qualifies as remainder beneficiary under the statute. He is therefore entitled to an accounting of the Trust.

Affirmed.

NAJAM, J., and DARDEN, J., concur.

---

18. The cost to produce an additional copy of an already statutorily-required accounting to a contingent beneficiary is presumably minimal and the trial court's *sua sponte* entry of a protective order has limited the distribution of the information in the accounting to Woodward.