**Thomas P. DONOVAN, Appellant–Plaintiff,**

v.

**GRAND VICTORIA CASINO & RESORT, L.P., Appellee–Defendant.**

No. 49A02–0903–CV–259.

Court of Appeals of Indiana.

Oct. 30, 2009.

Marc S. Sedwick, Sedwick Law Firm, P.C., Indianapolis, IN, Attorney for Appellant.

J. Patrick Schomaker, Smith, Rolfes & Skavdahl Co., L.P.A., Cincinnati, OH, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Thomas P. Donovan ("Donovan") filed a breach of contract claim against Grand Victoria Casino & Resort, L.P. ("Grand Victoria") and requested a declaratory judgment providing that he could not be excluded from blackjack for counting cards. Summary judgment was granted to Grand Victoria on both counts. Donovan appeals. We affirm in part, and reverse in part, concluding that Donovan is entitled to declaratory relief.[1]

### Issue

Donovan presents four issues for review, which we consolidate and restate as a single issue: whether the trial court erroneously granted summary judgment to Grand Victoria.

### Facts and Procedural History

Grand Victoria owns and operates a riverboat casino located in Rising Sun, Indiana. Among the games offered by Grand Victoria is blackjack.

Under the Indiana Administrative Code, "blackjack" means an ace and second card with a point value of ten dealt as the initial two cards to a player or the dealer. 68 IAC 10–2. A casino blackjack game starts with the dealer presenting and shuffling the cards. 68 IAC 10–2–6. The dealer spreads the cards out on the table for inspection, and then shuffles by hand or by an approved automatic shuffling device. 68 IAC 2–7. The patron puts money on the table and the money is exchanged for chips. Before the first card is dealt for a round of play, a player may make a wager in an amount not less than the minimum or more than the maximum amount set for the table. 68 IAC 10–2–4(a). After two cards have been dealt to each player and to the dealer, each player must indicate a decision to "double down, surrender, split pairs, stand, draw, make an insurance wager, or make an even money wager." 68 IAC 10–2–11. The dealer deals additional cards as necessary based upon the player decisions.

The player wins if (1) the sum of the player's card is twenty-one or less, and the sum of the dealer's cards is more than twenty-one; (2) the sum of the player's cards exceeds that of the dealer without exceeding twenty-one; (3) the player has a blackjack, and the dealer does not; or (4) the player has a combination of cards "based on promotions offered by the riverboat licensee if the executive director has approved the promotion." 68 IAC 10–2–4(a).

Donovan supplements his income by playing blackjack in casinos. He is a self-described "advantage player," who taught himself to count cards through using an internet website. (App.63.) Card counters keep track of the playing cards as they are dealt and adjust their bets accordingly. Presumably, a skilled card counter has a better chance of winning at blackjack because he has factored the card count into his decision on how to bet.

Donovan and Patrick Banfield, the former blackjack pit boss for Grand Victoria, had ostensibly agreed (through a third-party and fellow card-counter) that Donovan could play blackjack at Grand Victoria if he wagered no more than $25 per hand.

---

1. We heard oral argument in this case on October 14, 2009, at Indiana University Southeast. We wish to thank counsel for their advocacy and extend our appreciation to the faculty, staff, and students of Indiana University Southeast for their hospitality.

In June of 2006, Sonny Duquette replaced Banfield. Donovan continued to play blackjack from June until August, when he was barred from the blackjack tables but offered other games. Donovan refused to play games other than blackjack, and the casino excluded him.

On September 14, 2007, Donovan filed a complaint alleging that Grand Victoria had breached the terms of an implied-in-fact contract. He also sought declaratory and injunctive relief, requesting an order that "Grand Victoria allow [him] access to Grand Victoria's riverboat to play Blackjack." (App.50.) Grand Victoria moved for summary judgment. Although conceding that card counting is not illegal, Grand Victoria maintained that an Indiana privately-owned amusement entity may exclude a patron from its premises for any reason or none at all, i.e., it need not identify illegal conduct. Donovan filed a cross-motion for partial summary judgment, contending that Grand Victoria was obligated to offer him the game of blackjack according to the rules promulgated by the Indiana Gaming Commission ("the Commission").

The trial court granted summary judgment to Grand Victoria. Donovan now appeals.

### Standard of Review

Summary judgment is appropriate when the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Hendricks Co. Bd. of Comm'rs v. Rieth–Riley Const. Co., Inc.*, 868 N.E.2d 844, 848–49 (Ind.Ct.App.2007). Our review of a summary judgment motion is limited to those materials designated to the trial court. *Decker v. Zengler*, 883 N.E.2d 839, 842 (Ind.Ct.App.2008), *trans. denied.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.*

The fact that the parties made cross motions for summary judgment does not alter our standard of review. *Id.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

### Discussion and Decision

■ The parties agree that there is no dispute of relevant facts; they disagree only as to the applicable law. Grand Victoria contends that a privately-owned for-profit entity operating in Indiana has the right to exclude any prospective patron for a given reason or for no reason at all, so long as civil rights laws are not violated. Essentially, Grand Victoria relies upon the existence of a common law right of exclusion. *See Wilhoite v. Melvin Simon & Associates, Inc.*, 640 N.E.2d 382, 385 (Ind. Ct.App.1994) (holding that an individual had no property or liberty interest in access to a mall and observing: "At common law, a proprietor of a privately-owned amusement may exclude whomever he wishes for any reason, or for no reason whatsoever.")

■ The *Wilhoite* court rejected the patron's claim that because a mall opened itself to the public, it lost its character as private property, quoting *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 570, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972): " 'Nor does property lose its private character merely because the public is generally invited to use it for designated purposes.' " *Wilhoite*, 640 N.E.2d at 387.

Donovan argues that *Wilhoite* is distinguishable, in that the patron in *Wilhoite* simply wanted to shop at the mall, involving an activity and premises not subject to comprehensive regulations. According to Donovan, the common law has been supplanted in this instance, because in 1993 our Indiana Legislature chose to legalize and regulate riverboat gambling, a formerly-prohibited activity.

"Historically, the State of Indiana has prohibited gambling." *Am. Legion Post No. 113 v. State,* 656 N.E.2d 1190, 1192 (Ind.Ct.App.1995) (citing *State v. Nixon,* 270 Ind. 192, 384 N.E.2d 152 (1979) (holding that pari-mutuel wagering on horse races was unconstitutional)), *trans. denied.* However, in 1988, the Indiana Constitution was amended to delete the general prohibition against lotteries and to authorize lotteries conducted by the State Lottery Commission. Ind.Code 4–30. The General Assembly went on to authorize horse race gambling, Ind.Code 4–31, and, in 1993, approved riverboat casinos. Now, games of chance and skill may be played for money on a riverboat, albeit subject to regulations. *See* Ind.Code 4–33. Under Indiana Code section 4–33–4–1, the General Assembly gave the Commission the power and duty to administer and regulate gaming in Indiana. Pursuant to this authority, the Commission promulgated detailed regulations regarding casinos and their operations. *See* Ind.Code § 4–33–4–2; 68 IAC.

Otherwise, gambling continues to be strictly prohibited by Indiana's anti-gambling laws. *Schrenger v. Caesars Indiana,* 825 N.E.2d 879, 883 (Ind.Ct.App.2005), *trans. denied.* The reason for allowing the riverboat to exist as an exception to illegal gambling is two-fold. Indiana Code section 4–33–1–2 provides that the intent of the General Assembly, in creating riverboat gambling, was to "benefit the people of Indiana by promoting tourism and assisting economic development." The foregoing statute expressly contemplates "the strict regulation of facilities, persons, associations, and gambling operations[.]" *See id.*

Donovan argues that Grand Victoria, which opened its premises to the general public for tourism purposes and is subject to exhaustive regulations, should have no right to arbitrarily exclude a patron. In his view, arbitrary exclusion of patrons promotes neither tourism nor economic development. To further bolster his claim that a publicly-regulated, private entity may not arbitrarily exclude patrons, Donovan relies upon *Uston v. Resorts Int'l Hotel, Inc.,* 89 N.J. 163, 445 A.2d 370 (1982), a case in which appellant Uston, a card-counter, had been excluded from blackjack tables in a casino.

In *Uston,* the New Jersey Supreme Court held that its Casino Control Act partially divested Resorts of its common law right to exclude. *Id.* at 170, 445 A.2d at 373. The court discussed the competing rights of "an amusement place owner to exclude unwanted patrons" and "the patron's right of reasonable access" before concluding that a property owner has no legitimate interest in "unreasonably" excluding particular members of the public when the owner has opened its premises for public use. 89 N.J. at 170, 445 A.2d at 373. The common law right to exclude was substantially limited by a common law right of reasonable access to public places, but was not completely eliminated. *Id.* For example, an unruly patron could be excluded. With regard to the reasonableness of the exclusion of a particular patron for card counting, the Court held that the Casino Control Act[2] abrogated any com-

---

**2.** The Act was recognized as "extraordinarily pervasive and intensive." *Uston,* 89 N.J. at

mon law right Resorts may have had to exclude based on strategy employed, as the Act gave the Casino Control Commission "exclusive authority to set the rules of licensed casino games, which includes the methods for playing those games" and that the Act "therefore precludes Resorts from excluding Uston for card counting." 89 N.J. at 166, 445 A.2d at 371.

According to Donovan, because Indiana Gaming Regulations likewise set forth an exhaustive set of blackjack regulations, and do not prohibit card counting, Grand Victoria may not exclude him from play simply because he has developed a particular skill. Donovan is correct in his assertion that the relevant regulations do not prohibit card counting. 68 IAC 10–2–14, entitled "Prohibited acts," limits a player's touching of cards, prohibits touching by a spectator under any circumstances, and prohibits a dealer from touching cards "in any manner that would alter, mark, bend, or otherwise allow any card to be distinguished from any other card." The prohibited acts regulation is silent with regard to the mental exercise of card counting.

Grand Victoria argues that Indiana's regulatory scheme with respect to blackjack is not intended to be exhaustive, as it specifically provides:

> (d) This article sets forth the *minimum standards* within which games offered by Riverboat licensees must be conducted.

68 IAC § 10–1–1 (emphasis added). As such, Grand Victoria argues, casinos are free to impose more particularized standards, including ejection of card counters.

68 IAC 10–2–2(a) provides: "In accordance with 68 IAC 10–1, the riverboat licensee or riverboat license applicant shall submit rules of the game covering blackjack if the riverboat licensee will offer the game of blackjack." The rules of the game include, but are not limited to, specified options, variations of blackjack, use of an automatic shuffling machine, use of a shoe, touching of cards, visible hand signals, number of blackjack tables, minimum and maximum wagers, procedures for raising the house limit, location of the blackjack tables, number of decks of cards utilized during a round of play, the method of handling irregularities, "any additional rules of the game the riverboat licensee wants to impose that are in compliance with this article" and "any other information deemed necessary by the executive director, the commission, or the riverboat licensee to ensure compliance with the Act and this title and to ensure the integrity of the game." 68 IAC 10–2–2(b).

Thus, Article 10, Conduct of Gaming, provides a floor for the conduct of a blackjack game and riverboat licensees may submit additional rules for approval.[3] The summary judgment record before us is devoid of any evidence that Grand Victoria submitted a proposed rule regarding card counting or ejection of card counters.

As previously observed, the General Assembly vested the Commission with rule making authority. Ind.Code § 4–33–4–2. The Commission was charged with balancing the respective rights of the private property owner and the tourist. In our regulatory scheme, a tourist is entitled to rely upon the rules as promulgated by the Commission, but a casino is free to seek written approval from the Commission for game variations and more particularized rules. Moreover, even in the absence of a

---

168, 445 A.2d at 372.

**3.** 68 IAC 10–1–3(c)(4) provides: "No rules of the game may be utilized by a riverboat licen-

see or riverboat license applicant unless the rules of the game have been approved, in writing, by the executive director."

particularized rule concerning card counting, the casino is free, assuming notice has been given to the Commission, to take countermeasures such as using more than one deck.[4]

Grand Victoria may not simply take refuge in the common law right of exclusion, inasmuch as it is the public policy of this State that gambling is subject to "strict regulation," Ind.Code § 4–33–1–2(2), and the Commission has been given exclusive authority to set rules of riverboat casino games. Ind.Code § 4–33–4–2. The Commission did not enact a prohibition against card counting and Grand Victoria did not seek a prohibition by rule amendment. No law, regulation, or duly promulgated rule advised Donovan that the skill of card counting was prohibited.

Indiana has implemented a comprehensive scheme for regulating riverboat gambling and thus has partially abrogated the common law right of exclusion. Donovan was ejected solely for his mental conduct in the course of casino blackjack, a Commission-regulated game, and thus his ejection is not protected by the common law as expressed in *Wilhoite*. Here, as in *Uston*, Grand Victoria has no right to exclude Donovan on the grounds that he plays the game under existing rules. *See Uston*, 89 N.J. at 169–70, 445 A.2d at 373.

Donovan is entitled to summary judgment on his request for a declaratory judgment to the effect that Grand Victoria may not exclude him from blackjack because he counts cards.[5]

Affirmed in part; reversed in part.

NAJAM, J., and KIRSCH, J., concur.

---

**4.** 68 IAC 10–2–3(b) provides that a riverboat licensee may use one to eight decks of cards in the game of blackjack. 68 IAC 10–2–2(a) requires a riverboat offering blackjack to "submit rules of the game covering blackjack."

**5.** Summary judgment was properly granted for Grand Victoria on Donovan's contract claim. The designated materials, including Donovan's deposition, reveal a lack of mutuality of obligation, as required for contract formation. *See OVRS Acquisition Corp. v. Community Health Services, Inc.*, 657 N.E.2d 117, 127 (Ind.Ct.App.1995) (observing "unless each party to the contract has assumed a legal obligation to the other, the contract is lacking in mutuality"), *trans. denied.*